UNITED STATES, Appellee

v

NORMAN R. HANGSLEBEN, Private E–1, and
NELSON A. WEEDER, Private E–1,
U. S. Army, Appellants

8 USCMA 320, 24 CMR 130

No. 9527

Decided October 25, 1957

*First Lieutenant Gene E. Overbeck* argued the cause for Appellants, Accused. With him on the brief was *Major Frank C. Stetson.*

*First Lieutenant Richard W. Young* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant William K. Davenport.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

In prior cases each of the two accused had been sentenced by a special court-martial to confinement for six months. One of the trials was held on May 11, 1956, and the second was heard on the following day. Pending review of their cases by the convening authority, they were retained in the battery area, but the record does not show whether, prior to May 15, 1956, they were actually placed in confinement. On that date, the convening authority approved the findings and sentence and ordered the sentence executed, designating the United States Army Rehabilitation Center, Crailsheim, Germany, as the place of confinement. Around 9:00 o'clock that evening, the accused, who were under guard in the barracks, were placed in detention cells in the battalion guardhouse, from which they escaped. As a consequence of their departure, they were tried for escape from confinement and violation of a lawful general order, being convicted of the former offense only, in violation of Article 95,

Uniform Code of Military Justice, 10 USC § 895. They were sentenced to a bad-conduct discharge, total forfeitures and one year's confinement which intermediate appellate authorities have affirmed. Their petition for review was granted by this Court to consider:

(1) Whether, at the time of their escape on the evening of May 15, 1956, the accused were lawfully confined in the battalion guardhouse.

(2) Whether a decision by two of three participating members of a board of review nominally composed of four members is valid.

In support of the first assigned error, the petitioners rely on United States v Gray, 6 USCMA 615, 20 CMR 331, and argue principally that they were unlawfully confined on the night of May 15, 1956. Therefore, the argument proceeds, their escape was not a violation of the Uniform Code of Military Justice. That contention is bottomed upon their interpretation of the following military regulations in effect at that

**321**

time. Circular No. 633–60, Headquarters United States Army Europe (USAREUR), May 16, 1955, pertaining to policies and procedures for the pretrial and post-trial confinement of prisoners, provides in part that:

"e. Prisoners sentenced to confinement for six months or less without a punitive discharge, who are first offenders (those with no admissible previous conviction by court-martial), will be held in provisional guardhouses."

The foregoing circular is supplemented by Circular No. 633–1, June 7, 1955, of Headquarters Southern Area Command, a subordinate command. This latter circular provides for the establishment of provisional guardhouses at three locations, Stuttgart, Nurnberg, and Dachau, and for "temporary detention facilities at military police stations." It directs that:

"(d). Prisoners with a sentence to six months or less confinement at hard labor and no punitive discharge who are first offenders. Such prisoners will not be transferred to the USAREUR Rehabilitation Center until action has been taken by the court-martial convening authority. They will be retained in the nearest provisional guardhouse unless transfer to Dachau Guardhouse has been approved by this headquarters, telephone Munich Military 6430."

Insofar as the permanent place of confinement is concerned, the sentences of the accused place them un- ▐ der paragraph (d) above, and they could not be transferred to the Rehabilitation Center at Crailsheim until the convening authority had acted. That distance was some 100 miles, and transfer the night of May 15th could hardly be expected. No doubt they could have been confined at Dachau, but that was some thirty miles removed from the locale of the trial, and we have grave doubts that immediate movement there was demanded by the circulars. Critically analyzed, they provide for policies and procedures for more permanent detention facilities, but do not deprive commanding officers of all discretion to confine members of

their command temporarily, as it is to be noted that establishment of temporary detention facilities in military police stations may be authorized by Headquarters Southern Area Command. From all of the foregoing, we are inclined to the belief that the decision to confine the accused on post overnight was legal and not in violation of the circulars. But we can pretermit that question in this in- ▌ stance for, even assuming the place of confinement was contrary to their terms, any theory that the accused could help themselves to freedom is untenable. In that connection, it is necessary to remember that confinement in this case was legal. At best, accused can only assert that they should have been incarcerated at some other penal installation.

The problem of breaking jail because of claimed irregularities in sentence and confinement has been presented to civilian courts, and the cases dealing with the question make a proper distinction between confinement which is without any color of authority and confinement which is procedurally irregular or improper. We have considered the former situation in deciding that, if the officer imposing confinement acts without authority, the confinement is illegal and the "prisoner" cannot be guilty of escape. United States v Gray, supra.

Here we are for the first time confronted with the latter situation, and legal confinement questioned only by purported irregularities in procedure calls for the application of different rules. The Federal civilian rule in this area is succinctly stated in Aderhold v Soileau, 67 F2d 259 (CA5th Cir) (1933):

". . . A prisoner in a penal institution whose sentence is irregular or voidable may not for that reason, and before some court has so adjudged, defy his guards and run away. A difference of opinion might cause a death. Such a doctrine would set discipline at naught. The statute, 18 USCA § 753 (h), forbids escape, not only to those 'properly in the custody of the Attorney General' but also to all 'who are confined in any penal or correctional institution, pursuant

to his direction,' without mention of the propriety of the confinement. We are of the opinion that attempts at escape from such institutions are thereby forbidden to all inmates, and that, if they consider their confinement improper, they are bound to take other means to test the question."

See also Godwin v United States, 185 F2d 411 (CA8th Cir) (1950); Bayless v United States, 141 F2d 578 (CA9th Cir) (1944).

We, too, believe that if the retention is only irregular or improper, some means other than escape must be used by convicted persons to test their belief that they are illegally incarcerated. Although in the military bail is not available, an accused is given credit for the time he spends in confinement and, unless conditions are intolerable—a question not herein involved—his temporary sojourn in one compound in lieu of confinement in another is not prejudicial to any right or privilege he enjoys. Therefore, if he is aggrieved by the action of his commanding officer, he can seek redress from higher headquarters. Failing in that, he has at his disposal a complete appellate system, the door to which stands always open. All this he is given without any expense as his costs are paid and his attorneys are furnished by the Government. Under these circumstances, we cannot believe the doctrine of self-help is an acceptable defense. While appellate processes are not speedy and the time element would make relief by appeal from this sort of irregularities questionable, the serious consequences which are potentially present in every jail break require a most limited application of the principle of self-help. In this instance, had these accused been observed in breaking out of their overnight jail, they might have been killed or violence could have fallen upon the guard personnel. Therefore, we are as disturbed about the possible effects of acts of this character as was a Pennsylvania court when it said:

"They are not, however, entitled to raise any question as to the regularity of sentence by breaking the jail or the penitentiary, as such proceedings frequently involves danger to the lives of the officers of the prison." [Commonwealth v Francies, 73 Pa Super 285 (1919).]

Indeed, if we were to grant the accused the defense of self-help in such a situation as faces us in this case, we would not discourage breaches of discipline, stockade and guardhouse riots, and possible acts of violence for mere irregularities which, in their final determination, saddle no measurable prejudice on an accused.

One further thought should be expressed concerning our determination that this confinement was, at its worst, merely an irregular method of holding the accused. Paragraph 21d of the Manual for Courts-Martial, United States, 1951, provides as follows:

"*Responsibility for restraint after trial.*—Upon notification from a trial counsel of the result of a trial (44e (2)), a commanding officer will take prompt and appropriate action with respect to the restraint of the person tried. Such action, depending on the circumstances, may involve the immediate release of the person from any restraint, or the imposition of any necessary restraint pending final action on the case."

As shown by the facts, this confinement was after trial, and the responsible officer had the duty to impose the restraint he believed necessary pending final action on the case. Apparently after the convening authority acted and the sentence became final at the trial level, it was believed that additional protective measures were required. It is entirely reasonable to assume from this record that the move from the barracks to the battalion guardhouse was prompted by a belief that additional precautionary measures were necessary to retain custody of the accused pending movement to the Rehabilitation Center on the following day. Assuming, as contended by the accused, that the military officials erred in not transporting them to a provisional guardhouse that night, the failure to meet that requirement did not release the accused from the obligation to serve the confinement. The argument that, because the wrong place was selected, the

accused could break their way to freedom in essence reduces itself to the assertion that they could lawfully escape because they were placed temporarily in the wrong wing of the prison.

We, therefore, conclude that an accused is guilty of escape when he breaks out of confinement which is imposed properly, although the place of confinement may not be one of those specifically authorized by superior authorities.

We may briefly dispose of the second allegation of error. When the case was referred to the board of review, it consisted of three members; but, at a later date, a fourth member was added. It appears that this fourth member was to replace one of the then-serving members, and at the time this case was heard he was being oriented in the procedure of the board of review. As a consequence of his being a replacement, he did not participate in the two to one decision which the board rendered adversely to the accused. Appellate defense counsel argue that the two members voting to affirm the finding and sentence do not constitute a majority of the board as required under Rule I, Uniform Rules of Procedure for Proceedings In and Before Boards of Review, May 31, 1951, and, therefore, that its action is illegal.

Under Article 66, Uniform Code of Military Justice, 10 USC § 866, The Judge Advocates General ▮ have the power to set up ▮ and prescribe rules for the boards of review within the limitation that all such boards must have a minimum of three members. The fixing of the number of members necessary to constitute a quorum is a procedural act. United States v Petroff-Tachomakoff, 5 USCMA 824, 19 CMR 120.

Rule I, supra, states:

*"A majority of the members of a board of review will constitute a quorum for the purpose of hearing and determining any matter referred to the board. The determination of any matter referred to a board of review will be according to the opinion of a majority of its members. In the absence of a quorum the senior member present may make all necessary orders touching any proceedings pending in the board preparatory to hearing or decision thereof."* [Emphasis supplied.]

It is contended by the accused that the language quoted above means that a majority of the designated members are necessary not only to constitute a quorum but also to render a decision. In this instance, that interpretation would mean that three members would constitute a quorum, but any decision rendered must be by a unanimous board. Not only would that interpretation require a procedure contrary to the practice of any judicial system of which we have knowledge, but it would also render one of the two provisions of the rule of no force and effect. We reject an interpretation which brings about that result and arrive at the following construction. Under the wording of the first sentence, a majority of the members of the board constitutes a quorum for the purpose of hearing and determining any matter. Therefore, when a quorum sits, the board can function legally if its entire membership comprises three or more officers or civilians, Article 66(a), supra. In order for that quorum to rule legally, the decision need be only concurred in by a majority of the members participating. Certainly when a rule is susceptible of two different meanings, one orderly and logical and the other unreasonable, it should be interpreted in such a manner as to bring it within the first mentioned meaning. We are certain The Judge Advocates General intended to prescribe logical rules, and if we give effect to their intent, the construction we set out above necessarily follows. In the light of that, the findings and sentence were legally rendered.

The decision of the board of review is, therefore, affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in the result):

I would concur outright in the Court's opinion were it not for the ▮ implication contained therein—relating to the second issue discussed—that panels could

be created among the individual boards of review to hear and determine cases. Article 66(a), Uniform Code of Military Justice, 10 USC § 866, provides that The Judge Advocate General of each service shall constitute in his office one or more boards of review, "each composed of not less than three commissioned officers or civilians." No maximum limit is placed on the number of members who may serve on a board. Rule I of the Uniform Rules of Procedure for Proceedings In and Before Boards of Review requires that any matter referred to a board of review will be "according to the opinion of a majority of its members." The situation that disturbs me may be illustrated by the following hypothetical example: Suppose The Judge Advocate General of a service selected ten men to serve on a particular board. Of this number only six would be necessary to constitute a quorum for the purpose of hearing and determining any matter referred to it. Of these six, however, only a majority of four would be necessary to decide a case. Thus a situation is created where a number less than half of the total number assigned to the board could act for the entire board. I have no doubt that Congress never intended such a practice when they empowered The Judge Advocates General in Article 66 (f), supra, to prescribe uniform rules of procedure before boards of review.

In the present case, however, I am satisfied that only three members participated in the board's consideration of the case. The fourth member's assignment to the board was solely for the purpose of administration and to facilitate the orderly transfer of one of the regular members so that the board would at all times have not less than three assigned members. Under these circumstances, I concur in the Court's decision.