UNITED STATES, Appellee

v

KENNETH J. McLAUGHLIN, Machinist's Mate Fireman Recruit, U. S. Navy, Appellant

18 USCMA 61, 39 CMR 61

Lieutenant David E. Miller, JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief were Major L. G. Bohlen, USMC, and Major W. R. Eleazer, USMC.

Commander Walter F. Brown, JAGC, USN, argued the cause for Appellee, United States. With him on the brief were Colonel C. R. Larouche, USMC, and Lieutenant Steven A. Weidner, JAGC, USNR.

## Opinion of the Court

QUINN, Chief Judge:

On February 21, 1968, a special court-martial at the United States Naval Station, Brooklyn, New York, convicted the accused of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886, and adjudged a sentence which included a bad-conduct discharge. Intermediate appellate authorities affirmed the conviction. We granted review to consider several assignments of error relating to the organization of the court-martial.[1]

The original appointing order designated twelve officers as members of the special court-martial. A few days before trial, Lieutenant G. E. Owren, a qualified lawyer, was appointed assistant defense counsel. The next day, however, he was relieved from that assignment and made "an additional member" of the court-martial. On the day of trial only three of the thirteen appointed members were present. The transcript of the trial contains no explanation for the absence; but the Government has filed a Certificate of Correction which indicates that trial counsel had announced that all the missing members were " 'absent with the express consent of the Convening Authority.' "

Also, about two weeks after the convening authority had reviewed the case, the accused and his counsel filed a statement certifying that Lieutenant Owren had not participated in the defense during the period of his appointment as assistant defense counsel, and that his designation as a court member had their "assent and approval."

Correction of the record to reflect what actually transpired at trial may properly be made during appellate review of the case. United States v Vintress, 17 USCMA 258, 260, 38 CMR 56; United States v Roberts, 7 USCMA 322, 325, 22 CMR 112; cf. United States v Stevens, 10 USCMA 417, 27 CMR 491. From the Certificate of Correction, it would appear, as appellate Government counsel contend, that the composition of the court-martial was unobjectionable because the convening authority had properly excused the absent members from trial of the accused's case. See United States v Holt, 8 CMR 360, petition denied, 2 USCMA 688, 8 CMR 178; United States v Shaull, 10 CMR 241, 254, petition denied, 3 USCMA 821, 11 CMR 248, petition for reconsideration denied, 3 USCMA 827, 12 CMR 205. Other matters in the rec-

---

[1] After this Court granted the accused's petition for review, the Secretary of the Navy remitted the bad-conduct discharge and directed issuance of a type of discharge warranted by the accused's military record. Thereafter, the accused was separated under honorable conditions. In my view, such action, during the pendency of a court-martial appeal, abates the proceedings and requires that the charges be dismissed. See my opinion in United States v Speller, 8 USCMA 363, 24 CMR 173; United States v Keeler, 10 USCMA 319, 27 CMR 393.

ord, however, change the import of the Certificate of Correction and draw into question the regularity of the composition of the court.

By appropriate endorsement, the accused's case was referred on February 15, for trial before a special court-martial appointed by an earlier order designated "Serial: 8-L." This order constituted a court-martial composed of a Lieutenant Commander, as the senior officer and president, and eleven other officers. On February 20, by letter order, the convening authority appointed Lieutenant Owren as a member of special courts-martial "serials 7-1 and *8-1* of 24 January 1968." (Emphasis supplied.) For the purpose of this appeal, we assume, but do not decide, that the reference "8-1" is a typographical error in which a lower case letter was used for a capital letter, and that the convening authority intended appointment to the court designated in order "Serial: 8-L." Cf. United States v Padilla, 1 USCMA 603, 606, 5 CMR 31.

As indicated, on the day of trial only three of the thirteen members of the court appeared. The reason for the appearance of so small a number of the total membership of the court is apparent from a memorandum by the convening authority captioned "Assignment of court members; date of." The memorandum sets up the special court-martial "schedule" for sessions for the month of February. It lists a number of dates, and under each date appear the names of only three members of the court. Lieutenant Owren's name is not listed, but a paragraph of the memorandum provides for changes in each group, and several changes are apparent in the copy of the memorandum before us. Again we assume, without deciding, that these were made with the approval of the convening authority. The memorandum provides that if additional members are required in each group because of challenge or other reason, "they will be taken according to availability in the order listed in the appointing order." Finally, the memorandum directs that members of the court "not named to sit as a member on a specific day according to the . . . schedule will be considered excused by the Convening authority."

We have no doubt that the organization of the court effected by the memorandum was well-intentioned; but it is manifestly wrong. Appointment of court members with the intention, and in accordance with a prearranged plan, that they not attend every session for which they have no excuse for absence has been "specifically and vehemently reprehended by service boards of review" and by this Court. United States v Allen, 5 USCMA 626, 638, 18 CMR 250. More importantly, the control over the court-martial exercised by the convening authority by means of the memorandum is contrary to the Uniform Code, supra, and the Manual for Courts-Martial, United States, 1951. The Uniform Code empowers the president of a special court-martial to act as the trial judge at all sessions of the court. Article 51, Code, supra, 10 USC § 851. Under the convening authority's memorandum, however, the officer named as president in the appointing order, and entitled to act as such by reason of his seniority of rank (Manual, supra, paragraph 40), is deprived of the right to attend and preside at any session of the court other than those prescribed by the convening authority. Under the Manual, supra, the time and place of the first session of the court may be designated by the convening authority in the appointing order (paragraph 36*b*), but thereafter the president is responsible for setting "the time and place of trial" (paragraph 40*b*(1) (*a*)). Moreover, while we are not informed that it actually happened, under the memorandum, it is possible the court could be split into two or more separate parts, each sitting on the same date for the trial of different accused. Congress never intended a court-martial to be so fragmented. Cf. United States v Hangsleben, 8 USCMA 320, 24 CMR 130, opinion by Judge Ferguson.

Apparently the convening authority desired to apportion the court-martial

work load by a system of case assignments. Such a system may be proper where there are separate courts, and the assignment of a case to a particular court is effected by appropriate means. See United States v Simpson, 16 USCMA 137, 36 CMR 293. The system of assignment must leave each court-martial free to function as provided by the Uniform Code and the Manual for Courts-Martial. The system in this case does not do so. Instead, the convening authority arrogated to himself part of the powers and responsibilities conferred by the Uniform Code upon the president of the court-martial. Under his memorandum, the convening authority, not the president, controls the sessions of the court, the person who presides as the president of the court at each session, and the members who will sit at each session. Such control over the composition and functioning of a court-martial is a different matter from excusing one or more members from attending a particular trial for a proper reason. It also goes far beyond a mere departure from standard procedure. Cf. United States v Simpson, supra. It is the kind of command control over the day-to-day functioning of a particular court-martial that we cannot sanction.

The decision of the board of review is reversed, and the findings of guilty and the sentence are set aside. Since the punitive discharge has been remitted and the period of confinement has expired, no useful purpose will be served by continuing the proceedings against the accused. Accordingly, the charges are ordered dismissed.

Judge FERGUSON concurs.