Raymond G. DeCHAMPLAIN,
Appellant,

v.

Col. Hewitt E. LOVELACE, Jr., et
al., Appellees.

No. 74–1766.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1974.

Decided Feb. 3, 1975.

Rehearing and Rehearing En Banc
Denied Feb. 14, 1975.

Certiorari Granted June 2, 1975.

See 95 S.Ct. 2392.

Eric M. Lieberman, New York City, for appellant.

Major Franklin A. Luna, Office of the Air Force Judge, Advocate Gen., United States Air Force, Washington, D. C., for appellees.

Before LAY and BRIGHT, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

LAY, Circuit Judge.

The petitioner DeChamplain, an Air Force master sergeant, appeals from the denial of a writ of habeas corpus (alternatively designated as a writ of mandamus) in which he sought release from confinement pending retrial by court-martial on charges of espionage. The United States District Court for the Western District of Missouri, the Hon. William H. Becker presiding, denied the petition in an unreported opinion holding that neither the Eighth Amendment nor the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 801 et seq., provide for release on bail of a serviceman pending court-martial, that a hearing on pretrial release was not required, and that confinement was reasonable in any event.[1]

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The history of DeChamplain's arrest and prosecution presents an interesting chapter in the annals of military justice. DeChamplain was arrested by the Air Force on July 2, 1971, for allegedly attempting to deliver clas-

sified defense documents to Soviet agents in Thailand. In November 1971, a general court-martial convicted him of violating three sections of the UCMJ: (1) UCMJ Art. 81, 10 U.S.C. § 881, conspiring to communicate classified information to an agent of a foreign government; (2) UCMJ Art. 92, failing to obey an Air Force regulation; and (3) UCMJ Art. 134, copying and attempting to deliver

We find it unnecessary to pass on the Eighth Amendment challenge to the unavailability of bail under the UCMJ;[2] we reverse the denial of the writ and remand to the district court for a hearing on pretrial release to be held before a neutral military officer or military judge.

DeChamplain has been deprived of his liberty since his arrest on July 2, 1971. Prior to his first trial, he was only restricted to the confines of Anderson Air Force Base on Guam. Since then, he has been held in prison-type cells, most recently at Richards-Gebaur Air Force Base in Missouri. He was ordered into confinement under Article 9 of the UCMJ, 10 U.S.C. § 809, which permits any commissioned officer to order an enlisted man arrested or confined on probable cause. The UCMJ does not provide

any system of bail or a hearing on the possibility of pretrial release. The decision on whether and under what conditions to confine the accused pending court-martial in the Air Force is presently made *ex parte* by his commanding officer and, in cases of extended confinement, by the officer with authority to convene a general court-martial for that jurisdiction as well.[3] The decision may be reviewed for abuse of discretion by the Court of Military Appeals.

Petitioner urges that this is a hollow procedure in most instances. He asserts that at no point is the accused afforded an opportunity to appear and present evidence on his behalf; he is limited to challenge by written petition *after* the initial decision has been made. Further, he states that the Court of Military Appeals has never found any confinement decision to be an abuse of discretion.[4]

classified documents affecting national defense to unauthorized persons. Those convictions were reversed, however, by the Air Force Court of Military Review on October 5, 1972. That court found, and the Court of Military Appeals affirmed the ruling, that DeChamplain's purported confession had been coerced and should have been suppressed. United States v. DeChamplain, ACM 21034, 46 CMR 784 (1972), aff'd, 22 U.S.C.M.A. 150, 46 CMR 150 (1973).

In May 1973, the Air Force decided to retry DeChamplain. The new trial has not yet been held, however. On November 13, 1973, the District Court for the District of Columbia enjoined further prosecution of DeChamplain on some of the charges because UCMJ Art. 134 had recently been declared unconstitutional by two United States Court of Appeals. *See* DeChamplain v. McLucas, 367 F.Supp. 1291 (D.D.C.1973). The decisions holding Art. 134 unconstitutional, both of which have been reversed, are Levy v. Parker, 478 F.2d 772 (3d Cir. 1973), rev'd, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), and Avrech v. Secretary of the Navy, 155 U.S.App.D.C. 352, 477 F.2d 1237 (1973), rev'd, 418 U.S. 676, 94 S.Ct. 3039, 41 L.Ed.2d 1033 (1974). Although the United States Supreme Court has reaffirmed the constitutionality of Article 134, prosecution is still barred by another provision of the district court's order which enjoins the Air Force from proceeding on any of the charges until it grants DeChamplain and his civilian defense counsel discovery of all documents material and relevant to the case. The government appealed this order on the ground that, due to the nature of the documents,

discovery would pose a danger to national security. The appeal from this portion of the injunction was argued before the Supreme Court on December 9, 1974, but no decision has yet been announced.

2. The term "bail" is used herein to denote release conditioned on the defendant posting financial security which will be forfeited if he fails to appear for trial. Pretrial release can, of course, be permitted on the defendant's personal recognizance or on other non-financial conditions as well.

3. Under the UCMJ, any officer may order an enlisted man into arrest or confinement upon probable cause, although persons charged with minor offenses to be tried by summary court-martial are normally not confined. UCMJ Arts. 9, 10, 10 U.S.C. §§ 809, 810. No provision is made for a hearing on the question of pretrial release, but the approval of the Convening Authority, that is, the officer with power to convene a general court-martial for the jurisdiction under UCMJ Art. 22, 10 U.S.C. § 822, must be secured if confinement is to exceed 30 days. Department of Defense Instr. 1325.4 (October 7, 1968). Thus, confinement is ordered initially by the officer determining the need to investigate the charges and is subject to review by the officer whose duty it will be to refer the case to the court-martial for trial. *See* Manual for Courts-Martial, United States, Ch. V, ¶ 21(b), (c) (Rev. ed. 1969).

4. DeChamplain did file a written challenge to the confinement decision, and since that decision was affirmed, he has filed four petitions for relief before the United States Court of

■ The threshold question we must resolve is the reach of the writ of habeas corpus over the proceedings of a court-martial. The UCMJ, promulgated in 1950 and amended in 1968 by the Military Justice Act, Pub.L.No. 90–632 (October 24, 1968), is a code governing all branches of the armed services. It defines offenses triable by courts-martial and the procedures to be followed by those courts. The jurisdictional base is not Article III of the Constitution but rather the Article I power of Congress to regulate the land and naval forces.

Military law has been described by the Supreme Court as "a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 2556 (1974), quoting from Burns v. Wilson, 346 U.S. 137, 140, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). In Burns, Chief Justice Vinson, in a plurality opinion (joined by Justices Reed, Burton and Clark), said:

> The statute which vests federal courts with jurisdiction over applications for habeas corpus from persons confined by the military courts is the same statute which vests them with jurisdiction over the applications of persons confined by the civil courts. But in military habeas corpus the inquiry, the scope of matters open for review, has always been more narrow than in civil cases. Hiatt v. Brown, 339 U.S. 103, 70 S.Ct. 495, 94 L.Ed. 691 (1950). Thus the law which governs a civil court in the exercise of its jurisdiction over military habeas corpus applications cannot simply be assimilated to the law which governs the exercise of that power in other instances. It is sui generis; it must be so, because of the peculiar relationship between the civil and military law. 346 U.S. at 139–140, 73 S.Ct. at 1047.

However, Chief Justice Vinson then observed:

> The military courts, like the state courts, have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights. . . . [W]hen a military decision has dealt fully and fairly with [a serviceman's constitutional claim,] it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence. 346 U.S. at 142, 73 S.Ct. at 1048 (emphasis added).[5]

Military Appeals, all of which have been denied. In addition, he has filed several administrative petitions, known as "complaints of wrongs," pursuant to UCMJ Article 138. See note 10, infra. In each case, the requested relief was ultimately denied chiefly on the ground that the seriousness of the offense sufficed to show that confinement was necessary to assure his presence at trial. DeChamplain also applied under UCMJ Article 39(a), 10 U.S.C. § 839(a), to the military judge before whom his charges are pending, but the judge refused a hearing on the ground that he lacked power to review a confinement decision. The Court of Military Appeals affirmed the dismissal of his petition on the ground that the Convening Authority had not abused his discretion in refusing pretrial release. Chief Judge Duncan concurred in the result, but he did state that he disagreed with the military judge's ruling that he lacked the authority to order the accused released from confinement. DeChamplain v. Lovelace, 23 U.S.C.M.A. 35, 48 CMR 506 (1974).

DeChamplain then sought release outside of military channels. Pursuant to a suggestion in Chief Judge Duncan's concurring opinion that the appropriate course would be to apply to the civil court having jurisdiction of DeChamplain's action for an injunction, he filed a habeas petition with the United States Court of Appeals for the District of Columbia Circuit. This was denied without prejudice for failure to proceed first in the district court. When the petition was filed in the district court, it was denied without opinion on the ground that the District Court for the Western District of Missouri, the district in which DeChamplain was confined, was the only one having jurisdiction. DeChamplain v. Secretary of the Air Force, Civ.No. 1863–73 (D.D.C. May 6, 1974).

5. Justice Frankfurter dissented from the result in Burns, wanting reargument. He did, however, concur in the reasoning of the plurality that civilian federal courts could examine constitutional issues in military habeas cases:

> The right to invoke habeas corpus to secure freedom is not to be confined by any a priori or technical notions of "jurisdiction." See my dissent in Sunal v. Large, 332 U.S. 174, 184, 67 S.Ct. 1588, 1593, 91 L.Ed. 1982. And so, if imprisonment is the result of a denial of due process, it may be chal-

Although there has been considerable academic debate about whether all, some or none of the Bill of Rights was originally intended to apply to armed forces personnel,[6] there is almost no disagreement that the Due Process Clause binds the military, Burns v. Wilson, *supra* at 142–143, 73 S.Ct. 1045, and that through it, if not directly, other constitutional provisions apply. Daigle v. Warner, 490 F.2d 358, 364 (9th Cir. 1974). The highest military court, the Court of Military Appeals, has held that constitutional safeguards apply to courts-martial except where expressly or by necessary implication made inapplicable. United States v. Jacoby, 11 U.S.C.M.A. 428, 430–31, 29 CMR 244, 246–47 (1960).[7]

 The process of defining the constitutional protections afforded in the military is far from complete, and this past year's Supreme Court decisions in Parker v. Levy, *supra,* and Secretary of the Navy v. Avrech, *supra,* shed little guidance on the matter other than reaffirming what was common ground in Burns v. Wilson, that while the Due Process Clause does protect soldiers, its content is different than in civilian life due to the institutional need for discipline. Thus, while entry into the service

does not entail forfeiture of all the protections of the Bill of Rights, "the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty . . .." Burns v. Wilson, 346 U.S. 137, 140, 73 S.Ct. 1045, 1048 (1953); *accord,* Parker v. Levy, *supra;* Kauffman v. Secretary of the Air Force, 135 U.S.App.D.C. 1, 415 F.2d 991, 997 (1969), cert. denied, 396 U.S. 1013, 90 S.Ct. 572, 24 L.Ed.2d 505 (1970); Gallagher v. Quinn, 124 U.S.App.D.C. 172, 363 F.2d 301, 304, cert. denied, 385 U.S. 881, 87 S.Ct. 107, 17 L.Ed.2d 108 (1966).

 Adopting the recognition by the Military Court of Appeals in United States v. Jacoby, *supra,* of the military's constitutional obligations, the District of Columbia Circuit Court of Appeals recently stated:

> We hold that the test of fairness [a reference to the Burns v. Wilson "full and fair consideration" test] requires that military rulings on constitutional issues conform to Supreme Court standards, unless it is shown· that conditions peculiar to military life require a different rule. . . . Kauffman v. Secretary of the Air Force, *supra,* 415 F.2d at 997.

---

lenged no matter under what authority of Government it was brought about. Congress itself in the exercise of the war power "is subject to applicable constitutional limitations." Hamilton v. Kentucky Distilleries Co., 251 U.S. 146, 156, 40 S.Ct. 106, 108, 64 L.Ed. 194. It is therefore not freed from the requirements of due process of the Fifth Amendment. . . . 346 U.S. at 148–149, 73 S.Ct. at 1052 (emphasis added).

6. *See, e. g.,* Henderson, Courts-Martial and the Constitution: The Original Understanding, 71 Harv.L.Rev. 293 (1957) (arguing that several provisions were intended to protect soldiers); *contra* Wiener, Courts-Martial and the Bill of Rights: The Original Practice, 72 Harv. L.Rev. 1, 266 (1958).

7. Chief Justice Warren has written:

> I suppose it cannot be said that the courts of today are more knowledgeable about the requirements of military discipline than the courts in the early days of the Republic. Nevertheless, events quite unrelated to the expertise of the judiciary have required a

modification in the traditional theory of the autonomy of military authority.

These events can be expressed very simply in numerical terms. A few months after Washington's first inauguration, our army numbered a mere 672 of the 840 authorized by Congress. Today, in dramatic contrast, the situation is this: Our armed forces number two and a half million; every resident male is a potential member of the peacetime armed forces; such service may occupy a minumum of four per cent of the adult life of the average American male reaching draft age; reserve obligations extend over ten per cent of such a person's life; and veterans are numbered in excess of twenty-two and a half million. When the authority of the military has such a sweeping capacity for affecting the lives of our citizenry, the wisdom of treating the military establishment as an enclave beyond the reach of the civilian courts almost inevitably is drawn into question.

Warren, The Bill of Rights and the Military, 37 N.Y.U.L.Rev. 181, 187–88 (1962) (footnotes omitted).

Under this principle, with which we are in accord, we deem servicemen to enjoy the same rights of due process as civilians unless the government demonstrates a need for a different rule in the military.

We then move to the question of whether DeChamplain is entitled to a hearing on pretrial release before a neutral officer or military judge.[8]

First, a fundamental component of due process is the presumption of innocence accorded the criminal defendant. In re Winship, 397 U.S. 358, 362, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Pretrial release has long been recognized as a vital concomitant of that presumption. If a person may arbitrarily be confined before his trial, then in truth punishment precedes conviction and the presumption of innocence avails defendant little. Stack v. Boyle, 342 U.S. 1, 4, 72 S.Ct. 1, 96 L.Ed. 3 (1951). Furthermore, the "traditional right to freedom before conviction permits the unhampered preparation of a defense . . .." Id., see Hudson v. Parker, 156 U.S. 277, 285, 15 S.Ct. 450, 453, 39 L.Ed. 424 (1895); Kinney v. Lenon, 425 F.2d 209, 210 (9th Cir. 1970).

Whether the right to pretrial release is based on the Fifth Amendment guarantee of no deprivation of liberty without due process of law or on the Eighth Amendment's prohibition of excessive bail, it clearly is not absolute in either the civil or military spheres. The government's legitimate interest that those arrested on probable cause give reasonable assurance that they will appear for trial and submit to sentence if convicted must be weighed in the balance. Stack v. Boyle, supra at 4, 72 S.Ct. 1; Ex Parte Milburn, 34 U.S. (9 Pet.) 704, 709, 9 L.Ed. 280 (1835). In Stack v. Boyle, the Court held that bail should be no higher than that necessary to reasonably assure the presence of the defendant, considered as an individual, at trial. 342 U.S. at 5–6, 72 S.Ct. 1. The UCMJ, while not providing a bail system, adopts a similar test for conditions of pretrial release. UCMJ Article 13 provides:

> [N]o person, while being held for trial . . . may be subjected to punishment . . . other than arrest or confinement . . ., nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances require to insure his presence . . ..

UCMJ Art. 13, 10 U.S.C. § 813. See also United States v. Blackwell, 19 U.S.C. M.A. 196, 41 CMR 196 (1970); United States v. Bayhand, 6 U.S.C.M.A. 762, 21 CMR 84 (1956).

While pretrial release is authorized by the UCMJ under apparently proper standards, the procedures for requesting release fail to comport with the minimum requirements of due process in three ways. First, the decision as to whether confinement is necessary is often made not by a neutral officer or judge but rather by the same officer who institutes the investigation and urges that the accused should be prosecuted. Only when confinement will last more than 30 days is the approval of the Convening Authority required.[9] Second, the accused is not afforded a hearing at any time; his only recourse is a written challenge addressed to a superior of the officer ordering his confinement or the Convening Authority.[10] Third, the bur-

---

8. Since the petitioner could be ordered released on his own recognizance or subject to various non-financial restrictions, it is not necessary to decide whether the Eighth Amendment requires consideration of release conditioned on the posting of monetary security.

9. See note 3 supra.

10. The accused may challenge the decision to confine him by filing a written petition under UCMJ Article 138, which provides:

> Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the com-

den of proof is placed on the accused; he is required to show why he should not be confined.

In civilian courts, it has long been the rule that neither an active participant in the prosecution nor the grand jury may be permitted to determine the availability of pretrial release. The Supreme Court noted with reference to parole revocations that "[t]he officer directly involved in making recommendations cannot always have complete objectivity in evaluating them." Morrissey v. Brewer, 408 U.S. 471, 486, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1972). In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Supreme Court voided a search warrant because it was signed by New Hampshire's Attorney General who was actively involved in the investigation and was later the chief prosecutor at the trial. *Id.* at 450, 453, 91 S.Ct. 2022. The Court held that one so attached to the prosecution was *per se* disqualified from acting as the necessary "neutral and detached magistrate," because "prosecutors and policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigations—the 'competitive enterprise' that must rightly engage their single-minded attention." *Id.* at 450, 91 S.Ct. at 2030.

In prison disciplinary proceedings, where, as in the military, how much process is due depends upon special institutional needs for discipline and order, *see* Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the courts have universally condemned the practice of permitting the official who invokes the charges to sit on the reviewing committee. Finney v. Arkansas Board of Correction, 505 F.2d 194 (8th Cir. 1974); United States ex rel. Miller v. Twomey, 479 F.2d 701, 715–716 (7th Cir. 1973); Sands v. Wainwright, 357 F.Supp. 1062, 1084–1085 (M.D.Fla.), vacated, 491 F.2d 417 (5th Cir. 1973), cert. denied, Guajardo v. Estelle, 416 U.S. 992, 94 S.Ct. 2403, 40 L.Ed.2d 771 (1974); United States ex rel. Neal v. Wolfe, 346 F.Supp. 569, 574–575 (E.D.Pa.1972); Landman v. Royster, 333 F.Supp. 621, 653 (E.D.Va. 1971).

The danger that the "competitive enterprise" of law enforcement will make impartial evaluation of the evidence impossible and so deprive the accused of his liberty on arbitrary and improper grounds is just as great in the military. We conclude that the initial decision to confine pending trial must be made by an officer or military judge who is neutral and detached from the prosecution of the case.

■ Petitioner suggests that the Convening Authority should be disqualified from any part in this decision because it is he who determines whether or not a court-martial will be convened after the charges have been investigated. It is suggested that in this his position is analogous to the grand jury in civilian courts. However, the grand jury, unlike the prosecutor, is barred from determining pretrial release because it is not permitted to hear evidence presented by the defense.[11] Where that defect has been

plaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon. 10 U.S.C. § 938. Confinement decisions are reviewed only to determine if there has been an abuse of discretion. *See* DeChamplain v. Lovelace, 23 U.S.C.M.A. 35, 37, 48 CMR 506, 508 (1974); Catlow v. Cooksey, 21 U.S.C.M.A. 106, 108, 44 CMR 160 (1971). If the Article 138 peti-

tion is denied, the accused may address a petition for extraordinary relief to the Court of Military Appeals, under the All Writs Act, 28 U.S.C. § 1651. *See* Catlow v. Cooksey, *supra* at 108.

11. As Justice Jackson observed in his concurring opinion in Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1 (1951):

It is not the function of the grand jury to fix bail . . .. Since the grand jury is a secret body, *hearing no evidence but the prosecution's, attended by no counsel except the prosecuting attorneys,* it is obvious that it is not in a position to make an impartial recommendation.

*Id.* at 9–10, 72 S.Ct. at 6 (emphasis added).

remedied, as it will be in the case of the Convening Authority under our holding today, a different rule is appropriate. We do not think that the responsibility of referring a case for trial to a court-martial in itself deprives the Convening Authority of the neutrality required by the Due Process Clause. *Cf.* Wallis v. O'Kier, 491 F.2d 1323, 1325 (10th Cir.), cert. denied, 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974).

■ However, the facts of a particular case may so actively involve an officer in the investigation and prosecution that his participation in the confinement decision would be improper. This would be the case, for example, whenever that person was the "accuser" in the case. The accuser is defined in the UCMJ as

a person who signs and swears to the charges, any person who directs that charges nominally be signed and sworn to by another, and any other person who has an interest other than an official interest in the prosecution of the accused. UCMJ Art. 1(9), 10 U.S.C. § 801(9).

The UCMJ currently bars an accuser from serving as Convening Authority in that case, UCMJ Arts. 22(b), 23(b), and it prohibits any person from serving on a court-martial if he is the accuser, a witness for the prosecution, investigating officer, or counsel in the same case. UCMJ Art. 25(d)(2), 10 U.S.C. § 825(d)(2). In the instant case the dismissal of the habeas petition was without an evidentiary hearing, so we do not have a sufficient record before us to permit determination of whether the Convening Authority here may be permitted to rule on pretrial detention.

■ Second, we conclude that the accused serviceman must be afforded an opportunity, before or within a reasonable time after he is ordered into confinement, to appear before a neutral officer or judge and present evidence relevant to the necessity for confinement before trial. The right to be heard is fundamental to due process. Morrissey v. Brewer, *supra;* Goldberg v. Kelly, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). While "it is true that the Due Process Clause does not require a hearing 'in every conceivable case of government impairment of private interest,' " Wolff v. McDonnell, *supra* at 557, 94 S.Ct. at 2975, quoting Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 894, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), it cannot be denied where the interest involved is the severe deprivation of pretrial liberty. *Cf.* Hagopian v. Knowlton, 470 F.2d 201 (2d Cir. 1972) (cadet must have due process hearing before Army can expel him from West Point); Committee for G.I. Rights v. Callaway, 370 F.Supp. 934, 941 (D.D.C.1974) (hearing required before soldiers can be deprived of liberty or otherwise administratively sanctioned). At least one circuit has held that civilians are constitutionally entitled to a hearing on pretrial release in bailable cases.[12] Heikkinen v. United States, 208 F.2d 738, 742 (7th Cir. 1953); *see also* United States v. Gilbert, 425 F.2d 490 (D.C.Cir. 1969); *cf.* Lynch v. Baxley, 386 F.Supp. 378 (M.D.Ala.1974) (three-judge) (due process hearing required before involuntary civil commitment); Moss v. Weaver, 383 F.Supp. 130 (S.D.Fla.1974) (in nonbailable juvenile cases, no detention without probable cause hearing).

■ And finally, we conclude that due process requires the government to bear the burden of proving the necessity for confinement or lesser restrictions pending trial. While the appellant properly bears the burden of proof on appeal, before the initial decision is made the government should have to justify any curtailment of liberty since the accused is presumed innocent. *See* Stack v. Boyle, *supra* at 5–6, 72 S.Ct. 1; Tot v. United States, 319 U.S. 463, 469, 63 S.Ct.

---

12. Since the Bail Reform Act of 1966, 18 U.S.C. § 3146 et seq., provides for such hearings in federal cases, there has been little litigation of the constitutional requirements. Offenses triable by court-martial are expressly not subject to the Act, however. 18 U.S.C. § 3152(2).

1241, 87 L.Ed. 1519 (1943).[13] If release is not granted, the decision-maker should provide the accused with a short statement in writing of the basis for the decision. *Cf.* Wolff v. McDonnell, 94 S.Ct. at 2963; Morrissey v. Brewer, *supra* at 489, 95 S.Ct. 2593.

The Air Force has not demonstrated that "conditions peculiar to military life require a different rule" or that the military will be prejudiced by granting a prompt hearing on pretrial release to the accused.[14]

The denial of the writ of habeas corpus is vacated and the proceedings are remanded to the district court with directions to enter an order within five days of the issuance of this court's mandate directing defendant Lovelace, DeChamplain's Convening Authority, to produce petitioner before a neutral officer or military judge within 15 days of the district court's order; at that time petitioner is to be granted an evidentiary hearing under UCMJ Art. 13 relevant to whether or not petitioner is entitled to pretrial release under appropriate conditions. Upon failure of the military authority to follow the district court's directive, the district court shall issue the writ of habeas corpus granting petitioner pretrial release.

It is so ordered. The mandate shall issue forthwith.

---

**13.** The Supreme Court has recognized that the Due Process Clause requires the government to bear this burden in a criminal trial:

> In all kinds of litigation it is plain that where the burden of proof lies may be decisive of the outcome. . . . There is always in litigation a margin of error, representing error in factfinding. . . . Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by . . . placing on the other party the burden of producing a sufficiency of proof in the first instance . . . .. *Due process commands that no man shall lose his liberty unless the Government has borne the burden of producing the evidence* . . . ..

Speiser v. Randall, 357 U.S. 513, 525–526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958) (emphasis added).

**14.** It is noteworthy in this regard that the Army has voluntarily adopted a program whereby pretrial detainees are brought before Military Magistrates within seven days of their initial confinement. The magistrate may order the prisoner released and if he does so, the prisoner may not be returned to confinement before trial except for a new offense or on the basis of newly discovered evidence. If the magistrate refuses release, then he must review the need for confinement of each prisoner not less than every two weeks until pretrial confinement is terminated. The magistrate must also prepare a written checklist of the reasons why he refused release and the alternatives to confinement that he considered and found inadequate. While the program is currently mandatory only at Army installations with more than 50 pretrial detainees, other installations are required to review their procedures with a view to adopting the program. *See* Military Magistrate Program, Army Regulation 27–10, Change 13 (September 9, 1974); *id.* Message Change (October 17, 1974); Letter from Department of the Army, Office of the Judge Advocate General to All Army Staff Judge Advocates, August 5, 1974.

We of course express no opinion on the adequacy of the Army's program to fulfill the requirements of the Due Process Clause. However, we find its voluntary adoption to be persuasive evidence that no undue interference with the legitimate institutional needs of the military will result from our holding.

Further evidence that we impose no improper burden is the relatively small number of pretrial detainees in the armed forces. We are informed that the total number of pretrial detainees in all commands of the Army and Air Force was recently:

| Month | Air Force | Army |
|---|---|---|
| August 1974 | 97 | 1989 |
| September 1974 | 89 | 1752 |
| October 1974 | 88 | 1202 |

Letter from Franklin A. Luna, Major, USAF, to Robert C. Tucker, Clerk, United States Court of Appeals for the Eighth Circuit, January 17, 1975.