Ronald L. McDONALD

v.

The UNITED STATES.

Ricky A. SANDERS

v.

The UNITED STATES.

Nos. 396–73, 436–73.

United States Court of Claims.

Feb. 18, 1976.

J. Francis Pohlhaus, Washington, D. C., attorney of record, for plaintiffs. Nathaniel R. Jones, New York City, of counsel.

Alan L. Ferber, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant. Frances L. Nunn, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS and KASHIWA, Judges.

PER CURIAM:

In these consolidated cases, enlisted marines were convicted by separate general courts-martial of violations of the Uniform Code of Military Justice, and sentenced to terms of imprisonment and bad conduct discharges. After completion of appellate review within the military system, they brought these actions for back-pay, asserting among other reasons that their convictions were constitutionally invalid because of the involvement under the Uniform Code of the convening authority in the court-martial process.

Ronald McDonald, whose crime was assault with intent to commit murder, levied three attacks on his court-martial: (1) Inclusion in the record submitted to the reviewing authorities of an investigative report made pursuant to Article 32 of the Uniform Code violated due process and his right of confrontation; (2) the Code's assignment of multiple roles to the convening authority violated due process; and (3) the general article, Article 134, 10 U.S.C. § 934, under which he was convicted is vague and overbroad. The first contention was rejected in an opinion of the court on December 18, 1974, *McDonald v. United States,* 205 Ct.Cl. 780, 507 F.2d 1271. The third point is no longer viable after *Parker v. Levy,* 417 U.S. 733, 757–58, 94 S.Ct. 2547, 2562–63, 41 L.Ed.2d 439, 458 (1974), and *Secretary of the Navy v. Avrech,* 418 U.S. 676, 94 S.Ct. 3039, 41 L.Ed.2d 1033 (1974). *See Augenblick v. United States,* 206 Ct.Cl. 74, 79, 509 F.2d 1157, 1160 (1975), *cert. denied,* 422 U.S. 1007, 95 S.Ct. 2628, 43 L.Ed.2d 669 (1975). There remains only the claim that the Uniform Code invalidly gives the convening authority too many powers in the court-martial scheme.

Ricky Sanders was convicted of wrongful possession and sale of marijuana, under Article 134, 10 U.S.C. § 934. His claim of the invalidity of that statute is likewise foreclosed by *Parker* and *Avrech, supra,* but he also presses the unconstitutionality of "the provisions of law of the Uniform Code of Military Justice that assign multiple roles to the convening authority in the initiation, prosecution, and review of courts martial."

The contention in both cases is that Congress acted unconstitutionally in the Uniform Code when it combined in the convening authority the powers to (1) select the members of the court-martial (Art. 25(d)(2), 10 U.S.C. § 825(d)(2)); (2) to detail the military judge (Art. 26(a), 10 U.S.C. § 826(a)); (3) to detail the trial counsel and defense counsel (Art. 27(a), 10 U.S.C. § 827(a)); (4) to refer the charges to the court-martial (Art. 34, 10 U.S.C. § 834; *cf.* Art. 18, 10 U.S.C. § 818; Art. 22, 10 U.S.C. § 822; Art. 30, 10 U.S.C. § 830; Art. 33, 10 U.S.C. § 833); (5) to review the court-martial record and take action thereon (Art. 60, 10 U.S.C. § 860); (6) to return for reconsideration and appropriate action specifications dismissed without a finding of not

guilty (Art. 62(a), 10 U.S.C. § 862(a)); and (7) to approve or disapprove the findings and sentence (Art. 64, 10 U.S.C. § 864).[1]

We have previously dealt with that subject in *Jones v. United States,* 205 Ct.Cl. 270, 499 F.2d 631 (1974), a court-martial case involving a single pay forfeiture of $40, unaccompanied by imprisonment or any other penalty. There we observed: "Plaintiff does not claim any unfairness or error in the proceedings, the findings, or the sentence—other than the use of the general system, prescribed by the Code, pivoting around the convening authority. Moreover, plaintiff does not ask for or desire a trial to show either that the use of this general system led to unjust or unfair proceedings or an unjust or unfair result in his particular case or that the general system has a tendency to lead to unfair or unjust proceedings or results. Nor has plaintiff given us any materials or information raising a triable issue as to either of those questions. We lack, in addition, relevant information as to the actual operation of the challenged Code provisions in this case, or generally. We are simply left with the bare provisions of the Uniform Code and asked to hold invalid any and every court-martial trial conducted under their aegis." *Ibid.* at 273–74, 499 F.2d at 633 (footnote omitted). On that record we refused to hold Jones's court-martial invalid. At the same time we emphasized that we were deciding only the specific case before us, not "a case with a heavier sentence or a

more detailed factual showing." *Ibid.* at 274, 499 F.2d at 633.

Now we have two cases with heavier sentences but only a minimally more detailed factual showing. Both sides have moved for summary judgment. Like Jones, the present plaintiffs disavow any showing of actual command influence or unfairness in their particular cases.[2] Their major effort is to show that the general system has a tendency to lead to unfair or unjust proceedings or results. This attempt consists mainly of five affidavits by three former Army Judge Advocate officers, one former Air Force officer-lawyer and one civilian lawyer who specialized in defending court-martial accuseds—none of the five was connected in any way with plaintiffs' cases or with the commands in which plaintiffs served—which either give broad conclusory statements of general unfairness or present a few specific episodes (wholly separate from plaintiffs' cases) which are recollected and interpreted by the affiants as showing unfair pressure or intervention by military superiors.[3] Plaintiffs also rely on some published general evaluations of the court-martial system by practitioners, legislators, and students.[4]

In response the Government has supplied affidavits by the two officers who were the legal advisors to the convening authorities in plaintiffs' cases, spelling out the steps in these cases and the methods of selection of the court-martial members and of trial and defense counsel.[5] The Government also

---

**1.** Findings of not guilty cannot be overturned and the severity of the sentence cannot be increased (unless the prescribed sentence is mandatory). Art. 62(b), 10 U.S.C. § 862(b); Art. 63(b), 10 U.S.C. § 863(b).

**2.** Plaintiffs do point out, however, that the majority of the court-martial members in McDonald's case, and all of the members in Sanders' case, were under the command of the respective convening authorities.

**3.** One of the affidavits is mainly concerned with military proceedings other than courts-martial governed by the Uniform Code.

**4.** In addition, plaintiffs have filed an excerpt from a court-martial transcript which shows (in their view) that that particular defense

counsel acted in a particular situation to help the command rather than the accused.

**5.** Plaintiffs have moved to strike portions of these affidavits on the ground that, while each affidavit now reveals that the Staff Judge Advocate actually selected the court-martial members, the Government is estopped from so contending since the statute requires selection by the convening authority. We deny the motion because we do not read the affidavits as showing that the convening authority failed to choose the court-martial members, though he may have relied heavily on recommendations from others.

filed two law review articles tending to support the general position that the court-martial system leads to fair trials and fair results.

With only these materials before us, we cannot say that the aspect of the Uniform Code which involves the convening authority in several steps of the court-martial process violates the Due Process Clause as applied to these two cases.[6] We stress again that there is no showing, or effort to demonstrate, that the convening authority's role led to unfairness in these particular instances. The whole challenge is to the general system as *per se* invalid. But that historical scheme was deliberately continued by Congress (in the Uniform Code) over the strong suggestion that commanding officers be severed from significant involvement with the court-martial process. *See* Hansen, *Judicial Functions For the Commander?,* 41 Mil.L.Rev. 1, 20–21 (1968). Congress chose instead, in 1950 and thereafter, to take account in other ways of the injurious impact of command influence. It provided for Courts of Military Review (formerly the Boards of Review) and an all-civilian Court of Military Appeals; Article 37(a), 10 U.S.C. § 837(a), is an across-the-board prohibition of command influence; Article 37(b), added in 1968, forbids consideration in promotion, assignment, transfer, etc., of the performance of duty by a serviceman as a court-martial member or of the zeal of any military defense counsel; Article 26(c), also added in 1968, provides that the military judge be designated by and responsible to the Judge Advocate General and that the convening authority cannot prepare any efficiency report on a military judge. *See also Gross v. United States,* Ct.Cl., 531 F.2d 482, decided this day. The Court of Military Appeals and the Courts of Military Review have rigorously enforced these and other strictures against command influence.[7] Even the opinion in *O'Callahan v. Parker,* 395 U.S. 258, 264, 89 S.Ct. 1683, 1686, 23 L.Ed.2d 291, 297 (1969), not favorable to the court-martial system, recognized the "strenuous efforts to eliminate the danger" of command influence.

In appraising this general aspect of the court-martial structure, we must heed the Supreme Court's recent instruction as to the differences between the civilian judicial system and the military scheme. *See Parker v. Levy,* 417 U.S. 733, 743–44, 749, 751, 756, 94 S.Ct. 2547, 2555–56, 2558, 2559, 2561, 41 L.Ed.2d 439, 450–51, 454, 455, 457 (1974); *Schlesinger v. Councilman,* 420 U.S. 738, 746, 757–58, 95 S.Ct. 1300, 1307, 1312–13, 43 L.Ed.2d 591, 602, 608–09 (1975). On the one hand, Congress has greater powers over the court-martial system and in that connection can take account of the primary purpose of military forces to be ready to fight wars should the occasion arise. *Parker v. Levy, supra,* 417 U.S. at 743, 756, 94 S.Ct. at 2555, 2561, 41 L.Ed.2d at 450, 457; *Schlesinger v. Councilman, supra,* 420 U.S. at 757, 95 S.Ct. at 1312, 43 L.Ed.2d at 608. On the other, Congress has been and should be concerned with ensuring fairness to servicemen. "In enacting the Uniform Code, Congress attempted to balance these military necessities against the equally significant interest of ensuring fairness to servicemen charged with military offenses, and to formulate a mechanism by which these often competing interests can be adjusted. * * *. [I]mplicit in the congressional scheme embodied in the Code is the view that the

6. Defendant challenges our jurisdiction to consider the merits at all, but *Schlesinger v. Councilman,* 420 U.S. 738, 744–53, 95 S.Ct. 1300, 1306–10, 43 L.Ed.2d 591, 600–06 (1975), upholds the right of civilian courts, including this one, to consider non-frivolous constitutional attacks on court-martial convictions which, if sustained, would render the convictions void. This is such a case.

7. The parties have between them cited a large number of such cases. Among those are: *Brookings v. Cullins,* 23 USCMA 216, 49 CMR 5 (1974); *United States v. Rosa,* 46 CMR 480 (1972); *United States v. McLaughlin,* 18 USCMA 61, 39 CMR 61 (1968); *United States v. Hicks,* 18 USCMA 38, 39 CMR 38 (1968); *United States v. Cole,* 17 USCMA 296, 38 CMR 94 (1967); *United States v. Wright,* 17 USCMA 110, 37 CMR 374 (1967); *United States v. Kitchens,* 12 USCMA 589, 31 CMR 175 (1961); *United States v. Hawthorne,* 7 USCMA 293, 22 CMR 83 (1956).

military court system generally is adequate to and responsibly will perform its assigned tasks. We think this congressional judgment must be respected and that it must be assumed that the military court system will vindicate the servicemen's constitutional rights." *Schlesinger v. Councilman, supra* at 757–58, 95 S.Ct. at 1313, 43 L.Ed.2d at 609.

This teaching means to us that we cannot invalidate the convening authority's participation unless, at the least, we are convinced by a factual showing either that there was injustice in the particular case or that the current system has a decided and inherent tendency toward marked unfairness. The former is concededly absent here, and the showing of general unfairness attempted by plaintiffs is too weak to overcome the presumption in favor of the congressional choice. The Supreme Court said in *Parker v. Levy, supra,* 417 U.S. at 756, 94 S.Ct. at 2561, 41 L.Ed.2d at 458: "For the reasons which differentiate military society from civilian society, we think Congress is permitted to legislate both with greater breadth and with greater flexibility when prescribing the rules by which the former shall be governed than it is when prescribing rules for the latter." Under that standard we have not been persuaded by plaintiffs' arguments and generalized affidavits (and other materials) that Congress could not permissibly conclude that because of military exigencies—calling upon the commanding officer to decide which personnel are properly available for court-martial duty, and at what time—it is preferable to keep the commanding officer in ultimate control of the appointment of court-martial members and the detailing of the trial and defense counsel and the military judge. Conversely, the Congress could rely on other mechanisms, including the independent Court of Military Appeals and its watchful eye, to ferret out and eliminate command influence in individual cases. *See also Gross v. United States,* Ct.Cl., 531 F.2d 482, decided this day. Plaintiffs cite some general conclusions that nevertheless command influence is inherent and pervasive. The opposite inference has been drawn by other knowledgeable authorities.[8] The matter is not so plain that we can take the extraordinary step of invalidating a basic foundation-stone of the congressionally ordained court-martial system.[9]

Of course we do not say that this is the only possible system or the best pattern. That is for Congress to decide. All we do and need say is that, on the materials proffered to us, we cannot hold that the current plan is so deficient or so unfair that it necessarily deprives court-martial accuseds, who are subject to conviction and imprisonment under it, of due process of law. *Cf. Withrow v. Larkin,* 421 U.S. 35, 46–47, 54–55, 58, 95 S.Ct. 1456, 1464, 1465, 1468, 1469, 1470, 43 L.Ed.2d 712, 723, 724, 728–730 (1975) (the combination of investigative and adjudicative functions does not, without more, constitute a due process violation as creating an unconstitutional risk of bias).

The defendant's motion for summary judgment is granted and the plaintiffs' motions for summary judgment are denied. The petitions are dismissed.

---

**8.** For instance, though the Task Force on the Administration of Military Justice in the Armed Forces reported the perceptions of many servicemen and some defense counsel that command control existed in general, it also reported that "such pressure has occurred from time to time, but it appears not to be pervasive." Report of the Task Force on the Administration of Military Justice in the Armed Forces, Vol. I, pp. 86–87.

**9.** Plaintiffs invoke *DeChamplain v. Lovelace,* 510 F.2d 419 (C.A. 8), *vacated as moot,* 421 U.S. 996, 95 S.Ct. 2392 (1975), as holding that the convening authority is necessarily a biased official. However, in that opinion, which dealt with the serviceman's right to a hearing on pretrial release before a neutral military officer or military judge, the Court of Appeals said with respect to the convening authority: "We do not think that the responsibility of referring a case for trial to a court-martial in itself deprives the Convening Authority of the neutrality required by the Due Process Clause." 510 F.2d at 426. *See also Wallis v. O'Kier,* 491 F.2d 1323, 1325 (C.A. 10), *cert. denied,* 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974).