## UNITED STATES, Appellee

v

## WILLIAM WRIGHT, Staff Sergeant, U. S. Air Force, Appellant

### 17 USCMA 110, 37 CMR 374

No. 19,938

June 23, 1967

*Lieutenant Colonel Milton E. Kosa* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta*.

*Lieutenant Colonel David B. Stevens* argued the cause for Appellee, United States. With him on the brief were *Colonel James R. Thorn* and *Colonel Emanuel Lewis*.

## Opinion of the Court

QUINN, Chief Judge:

Appellant stands convicted of issuing "bad checks," in violation of Article 123a, Uniform Code of Military Justice, 10 USC § 923a. Without comment, defense counsel at trial requested there be appended to the record, as an appellate exhibit, a transcript of remarks by the staff judge advocate to the court members in the presence of the law officer, trial counsel, and the accused and his counsel just "prior to convening" the court-martial. On this appeal, appellate defense counsel contend the staff judge advocate's "briefing" denied the accused a fair trial.

No useful purpose will be served by retracing the history of the pretrial lecture by the convening authority or his staff judge advocate to the members of a court-martial, as provided by paragraph 38, Manual for Courts-Martial, United States, 1951. Neither need we review the content of the various lectures that have been considered by this Court. Suffice it to note that, while we have sustained the pretrial lecture as an educational device, we have cautioned it be "carefully limited to general orientation on the operation of court-martial procedures and the responsibilities of court members." United States v Davis, 12 USCMA 576, 581, 31 CMR 162. Appellate Government counsel maintain the lecture in this case is "an almost verbatim copy" of that in *Davis*, and United States v Danzine, 12 USCMA 350, 30 CMR 350; and they argue that the conclusion in *Danzine*, that no prejudice to the accused resulted from the lecture, is determinative of the issue here. It may indeed be, as appears from a letter by the Judge Advocate General of the Air Force to staff judge advocates of general courts-martial commands (TJAG Letter 62/9, October 17, 1962), that the Twelfth Air Force Regulation No. 111–1, dated May 3, 1966, which prescribed the lecture and its content, was predicated upon the lectures used in *Davis* and *Danzine*. But this case is far different from *Davis* and *Danzine*.

The circumstances of the lecture in this case cannot be compared with those in *Danzine* and *Davis*. In *Danzine*, the lecture was delivered to the court members ten days before any case was referred to them for trial. The spirit of the meeting, as best as it could be portrayed by the record, was one of general orientation for the uninitiated by an appropriate official in the courts-martial structure. The lecture in *Davis*, which was in the same command, followed that pattern. Here, the court-martial was assembled, with the law officer, trial counsel, and the accused and his counsel, and the court members ready to convene formally, when the staff judge advocate stepped forward to deliver his remarks. The scene which suggests itself is that of a director appearing before the cast of a play, immediately before the curtain is to rise, to give them final instructions. At that point in the proceedings the law officer is the judge; and if any instructions as to the role and responsibilities of the court members are deemed necessary,

they should, and must, come from him. Intrusion of the commander or his staff legal officer at that stage of the proceedings only tends to belittle the law officer's authority. Cf. United States v Knudson, 4 USCMA 587, 16 CMR 161. Regardless of the nature of his remarks, therefore, it was wholly inappropriate for the staff judge advocate to enter the courtroom to lecture the court members. He may go into the courtroom as a spectator, but he should not assume to act as though he has a proper place in the trial of the cause. See United States v Guest, 3 USCMA 147, 11 CMR 147. *Davis* and *Danzine* do not sanction what was done here; and we unhesitatingly condemn the impropriety of these proceedings.

Not only are the circumstances of the lecture different from *Davis* and *Danzine*, but the content ■ goes much beyond the concept of "general orientation" approved in *Davis*. A number of inaccurate and misleading statements of law were made. For example, the staff judge advocate observed that reasonable doubt "involves a decision made in each case in the light of your own knowledge and experience in human affairs and the ways of the world, based on reason, not conjecture." Reasonable doubt should be defined in terms "of the kind of doubt that would make a person hesitate to act," rather than in terms of a decision to act, Holland v United States, 348 US 121, 140, 99 L ed 150, 75 S Ct 127 (1954); and, in either case, the action is not as to ordinary affairs, but in "important affairs" of life or in a " 'grave transaction.' " Section 6.01–3, Manual on Jury Instructions in Federal Criminal Cases, Seventh Circuit Judicial Conference, 33 FRD 523, 567; United States v Senior, 274 F2d 613, 617 (CA 7th Cir) (1960). See also United States v Kloh, 10 USCMA 329, 333, 27 CMR 403. At another point in the lecture, the staff judge advocate informed the court members he was "pass[ing]

on" to them "some of . . . [his] own observations" to enable them "to perform better as court members." He then expounded on several value judgments. Among other things, he indicated that the "primary function" of a court-martial sentence is "deterrence"; and he implied that only a sentence having that quality can have "an excellent effect on discipline," whereas others may "lead ultimately to a complete breakdown of discipline." The court members were also told that the "interests" of the military are "often different" from those of "society at large." Thus, they were specifically and directly asked to consider matters that could not otherwise come before them. See United States v King, 12 USCMA 71, 30 CMR 71; United States v Leggio, 12 USCMA 8, 30 CMR 8. The law officer should have stopped or corrected the staff judge advocate. His failure to do so left intact the imprint of the improper remarks upon the minds of the court members.[1]

Government counsel contend that, regardless of the content of the lecture, the accused was not ■ harmed because of the leniency of the sentence. They point out that the accused was sentenced to confinement at hard labor for only one year, whereas he could have been sentenced to confinement for five years for the eleven specifications on which he was convicted.[2] The lenity of sentence may indeed demonstrate that the court members disregarded matter improperly before them. United States v Albert, 16 USCMA 111, 115, 36 CMR 267; United States v Johnson, 14 USCMA 548, 552, 34 CMR 328. However, the difference between the maximum legal sentence and the actual sentence is not the only factor to be considered. The ten checks involved in the charges were all issued in a period of thirteen days. All resulted from the same problem·that faced the accused. Before this period, the ac-

---

[1] There are also a number of significant omissions in the lecture. For example, there is not a word about the presumption of innocence.

[2] Two of the offenses were not separately punishable, and the court members were so instructed.

cused had been rated an outstanding airman, and had been recommended as "highly deserving" of promotion in the next promotion cycle. His enlisted and officer-superiors recommended his retention in the service and indicated they were willing to work with him despite the offenses. Under the circumstances, all the acts of misconduct could easily be regarded as mere steps in a single transaction, for which the maximum punishment was a bad-conduct discharge and confinement at hard labor for only six months. See United States v Carter, 16 USCMA 277, 36 CMR 433; United States v Aloyian, 16 USCMA 333, 36 CMR 489. On this record, we are not convinced that the sentence indicates a degree of leniency demonstrating complete disregard of the influence of the lecture.

No such case as this need ever arise. If the convening authority and his staff legal officer believe it necessary to talk to court members previous to trial, they should confine themselves strictly to general orientation, that is, to advise the court members of the trial procedure, that they alone decide the accused's guilt or innocence, and they alone determine his sentence. When they discuss other matters, such as principles of law and the special interests of the military community, they enter upon dangerous ground. The court members must take their law from the law officer; they should not be placed in the position of having to match the instructions of the law officer against principles previously demarcated by the commander or his staff legal officer. As to particularities of military service, a court-martial is not a proceeding to deprive a club member of special privileges. It is a criminal court which can deprive the accused of his liberty and his livelihood, and place a stigma upon him that may remain for the rest of his life. The accused is entitled to a trial free from prejudice or appeal to special interests.

We have held that the orientation lecture has educational value. We adhere to that view. However, there is no room in the lecture for statements of personal belief or the presentation of the special value judgments of the lecturer.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judge KILDAY concurs.

FERGUSON, Judge (concurring in the result):

I concur in the result.

In my dissenting opinions in United States v Davis, 12 USCMA 576, 31 CMR 162, and United States v Danzine, 12 USCMA 350, 30 CMR 350, I expressed the view that these so-called orientation lectures constitute command control. I adhere to that position and do not join in my associates' expression that such have "educational value." If they do, it is the sort of education which the Congress sought to prohibit by enacting Uniform Code of Military Justice, Article 37, 10 USC § 837.

If there is need for orientation of court members, there is no reason why it cannot come solely from the law officer, an individual sworn impartially to try the issue between the accused and the United States, and who has no disciplinary responsibility. When, however, the convening authority or his representative enters the picture and begins to advise the court, the theme inevitably turns to unjustified acquittals and inadequate sentences, and the deleterious effect of such upon military discipline. See United States v Littrice, 3 USCMA 487, 13 CMR 43, and United States v Isbell, 3 USCMA 782, 14 CMR 200.

The "education" involved, then, becomes one of pointing courts toward convictions and heavy sentences regardless of the evidence. That is the sort of orientation attempted here, and for the reasons I set forth in United States v Davis and United States v Danzine, both supra, I agree prejudicial error occurred.

Moreover, the lecture was aggravated by its delivery to an appointed

court-martial waiting to hear the accused's case. See United States v Isbell, supra, at page 787, and United States v Littrice, supra. One can hardly imagine a police chief or prosecutor being allowed to deliver a lecture to a jury in civilian life immediately before trial. Cf. Parker v Gladden, 384 US 904, 17 L ed 2d 420, 87 S Ct 468 (1966). Nothing has ever persuaded me that the rigors of military discipline require a different procedure. Fundamental fairness is the same in either milieu, and it ill behooves any officer sworn to uphold the laws to engage in what is nothing less than common jury fixing. Compare 18 USC § 1503.

Having disassociated myself from any approval of the use of pretrial orientation lectures, as contained in the principal opinion, I join with my brothers in reversing the decision of the board of review.