UNITED STATES, Appellee

v

WALTER L. CLAYTON, JR., Airman Second Class,
U. S. Air Force, Appellant

17 USCMA 248, 38 CMR 46

*Lieutenant Colonel Carl R. Abrams* argued the cause for Appellant, Accused. With him on the brief were *Colonel Dwight R. Rowland, Colonel Joseph Buchta,* and *Lieutenant Colonel Bertram Jacobson.*

*Lieutenant Colonel Harry O. Hinz* argued the cause for Appellee, United States. With him on the brief was *Colonel James R. Thorn.*

## Opinion of the Court

FERGUSON, Judge:

Tried by general court-martial, the accused was found guilty of false swearing, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for six months. Intermediate appellate authorities affirmed, and we granted accused's petition for review on several issues, which will hereinafter be discussed.

I

The first question presented is the legal sufficiency of the evidence, resolution of which requires that we turn to the record for an examination of the adduced proof.

Accused was charged with false swearing, based upon allegations by him in a sworn statement that a Master Sergeant Posey had made homosexual advances toward him and had, in fact, committed indecent acts on his body. The transcript reflects accused alleged, under oath, that Master Sergeant Posey made homosexual advances to him and committed indecent acts on his body on or about the nights of November 14, 1965, and January 14, 1966. The statements were made on January 21, 1966, to Technical Sergeant Richard C. Shields during the course of an official investigation into Posey's behavior, which commenced as a result of Clayton's complaint. The investigation resulted in Posey being ordered to appear before an adminis-trative board which was to consider him for elimination from the service.

On August 11, 1966, accused was interviewed by Posey's defense counsel. As a result of that interview, the local Staff Judge Advocate, Lieutenant Colonel William E. Cordingly, was summoned to counsel's office. Clayton volunteered to Colonel Cordingly, "in substance, that he had made a prior statement that was false and that he would like to, at this point in time, make a correct statement." Cordingly immediately asked him to make no further remarks concerning the matter, and called in an Air Police investigator. Upon the latter's arrival, Cordingly fully and completely advised Clayton of his rights under Code, supra, Article 31, 10 USC § 831, and of his entitlement to counsel.

Thereafter, accused executed a second sworn statement, in which he denied the truth of his former statement and declared there was never any homosexual contact between him and Sergeant Posey.

In addition to the evidence of the foregoing contradictory statements, Posey appeared at the trial and testified he had done none of the acts and made none of the advances, as originally averred by the accused. Other proof indicated that Posey, serving as first sergeant, was known in his organization as the "First Skirt" and, in 1952, had been the subject of an investigation for homosexual conduct. That investi-

**249**

gation was, however, closed without action being taken against him.

Evidence for the defense indicated that Clayton and Posey were jointly interviewed by agents of the Office of Special Investigations on February 9, 1966. At the outset of this meeting, Clayton declared "that he wanted to refute this prior written statement [the one now alleged as perjuriously given] that he had given as untrue and false." When the agents, however, went into the matter, Clayton reaffirmed the truthfulness of his earlier accusation, but stated he wished to withdraw it in light of Posey's threat to sue him for slander in a civil action. Posey told the agents that he intended so to act not only toward Clayton but also toward the investigating agents.

Airman Clayton, electing to testify in his own defense, declared that the allegedly false accusation against Posey was in fact true. He conceded his second, contradictory statement to the Air Police investigator was untrue. The change was motivated by Posey's threat to take action against him civilly for slander and also to see that he was subjected to board proceedings and eliminated from the Air Force. He likewise admitted that, when first interviewed by the recorder for Posey's board, he had stated he could not remember the details of his encounters with Posey, although, under that officer's examination he subsequently regained his memory. Finally, he declared that he had once again lied when retracting his accusations against Posey during the interview with Posey's defense counsel. In short, accused's position was that his original sworn statement—now charged as falsely made—was in fact true and that all his subsequent contradictory declarations were false.

In addition to the foregoing, accused adduced the testimony of two other airmen, one of whom tended directly to corroborate Clayton's allegedly false statement and the other of whom testified as to advances allegedly made to him by Posey.

II

Based on the foregoing, appellate

**250**

defense counsel urge that the evidence is insufficient in law to establish accused's guilt of false swearing. Primarily, however, their argument appears to be one of credibility. We long ago recognized that "the weight of the evidence and the credibility of witnesses is a matter for the triers of fact to determine." United States v Strong, 1 USCMA 627, 637, 5 CMR 55, 65. See also United States v O'Neal, 1 USCMA 138, 2 CMR 44, and United States v Brand, 10 USCMA 437, 28 CMR 3. Thus, we do not weigh the case of the Government against that of the accused and determine again the question of guilt. Rather, we apply the standard of *legal* sufficiency. United States v Groom, 12 USCMA 11, 30 CMR 11.

Measuring the evidence by that rod, we are certain it is sufficient to sustain the findings of guilty. As ▉ in the case of perjury, a special quantitative rule governs prosecutions for the offense of false swearing. In United States v Guerra, 13 USCMA 463, 32 CMR 463, we recognized the following quotation from the Manual for Courts-Martial, United States, 1951, as setting forth the applicable standard for both offenses:

"The falsity of the allegedly perjured statement cannot, without corroboration by other testimony or by circumstances tending to prove such falsity, be proved by the testimony of a single witness." [Manual, supra, paragraph 210.]

Thus, there must be testimony by at least one witness which directly contradicts the allegedly false oath of the accused, and that witness' testimony must be corroborated by other proof of the statement's falsity. United States v Guerra, supra; United States v Nessanbaum, 205 F 2d 93 (CA 3d Cir) (1953), "The common situation is where the defendant has given a false version of a transaction with another person and the other person refutes him." *Nessanbaum*, supra, Footnote 4, at page 95. That is the situation presented here. Accused declared under oath that Posey committed certain acts of a homosexual nature on his body.

Posey, a single witness, contradicted his testimony. As such, the only question remaining for our decision is whether that contradiction is sufficiently corroborated in law to sustain the findings of guilty.

Here, the Government contends accused's later statements, both those volunteered to Posey's counsel and to Lieutenant Colonel Cordingly as well as the formal, sworn retraction of the earlier, allegedly false statement, are sufficient corroboration of Posey's testimony to uphold the verdict.

We agree with the Government and conclude accused's admissions—indeed, confession—that his earlier sworn statement was false is sufficient to corroborate Posey's testimony and to render the evidence legally sufficient. United States v Goldberg, 290 F 2d 729 (CA 2d Cir) (1961), so holds, the court there stating, at page 734:

"Examining the evidence on Counts I and IV in the light of this analysis, we see no basis for doubting that Stern's testimony that Goldberg had known Chait before the formation of the partnership was adequately corroborated by Mishel's testimony that Goldberg had admitted as much. The policy underlying the rule against a conviction simply by 'oath against oath' is met when Stern's oath is supported by testimony of a second witness sufficient to 'confirm the single witness' testimony and to induce the belief of it,' 7 Wigmore, Evidence, p. 277, even though the testimony of the second witness is to a statement emanating from the defendant himself."

Likewise, in Vetterli v United States, 198 F 2d 291 (CA 9th Cir) (1952), at page 293, it was stated: "We do not believe an extra-judicial admission made by an accused is insufficient as corroboration simply because it is such."

Finally, the rule is unequivocally set forth in 41 Am Jur, Perjury, § 69, in the following manner:

"Although proof of a contradictory statement of the accused concerning the matter in issue is not alone sufficient to sustain conviction for perjury, the rule is well established, without a decision to the contrary, that proof that one accused of perjury made statements which conflict with the statement upon which the perjury is founded is sufficient corroboration of a single witness, so as to warrant a conviction."

It has been suggested, however, that a single witness does not suffice to establish the *corpus delicti* of false swearing and permit the introduction of accused's statements as corroborative evidence. See United States v Smith, 13 USCMA 105, 32 CMR 105. No decision has been called to our attention which holds that the *corpus delicti*, as opposed to a legally sufficient case, must be established by more than one witness. To the contrary, it would appear that the testimony of a single witness, if believed by the law officer, is sufficient to establish the probability of the falsity of accused's allegedly perjured statement and permit the introduction of his later, contradictory statements in evidence. Such would seem to be implicit in opinions ranging from United States v Wood, 14 Pet 430 (U. S. 1840), through Hammer v United States, 271 US 620, 70 L ed 1118, 46 S Ct 603 (1926), to Weiler v United States, 323 US 606, 89 L ed 495, 65 S Ct 548 (1945). Indeed, logic compels the conclusion that it should not be required to prove a case justifying conviction of false swearing in order to use accused's pretrial statements. All that is required is corroboration by "other evidence . . . that the offense charged had *probably* been committed by someone." (Emphasis supplied.) Manual, supra, paragraph 140a; United States v Smith, supra. That is amply fulfilled by Master Sergeant Posey's testimony, upon the law officer's decision to accord him credibility and thereby determine that accused's statement was probably false. On this basis, accused's later statements became admissible. Manual, supra, paragraph 140a.

We conclude, therefore, that the evidence is sufficient to sustain the findings of guilty.

### III

The next issue before us involves whether the accused's trial was infected with command control. ▆▆▆▆▆▆ ■ The Government admits that the court-martial was subjected to the same "orientation" lecture with which we dealt in United States v Wright, 17 USCMA 110, 37 CMR 374, and under the same conditions as depicted in that case. It properly concedes such to have been prejudicial error and prays our remand for a rehearing. We agree that such disposition is necessitated under our decision in *Wright*, supra.

Normally, such would dispose of the case, but we believe further observations regarding the remaining issues may obviate error at another trial. These involve claims that the law officer's instructions regarding the offense charged and the issue of the voluntariness of accused's pretrial statement were prejudicially inadequate. Essentially, the contention is that they were not properly tailored to the law and evidence. Thus, although the Government clearly relied on proof of perjury by one witness and corroboration of his testimony by accused's pretrial statements, the law officer instructed the court at length on its proof by the means of two witnesses; by one otherwise corroborated witness; or by documentary evidence directly disproving the truth of the allegedly false statements. Much of this, particularly the reference to documentary evidence of falsity, was extraneous and misleading and may have caused the fact finders to convict accused solely on the contradictions between his statements. See United States v White, 14 USCMA 646, 34 CMR 426. We suggest that, at any retrial of the case, the law officer shape his instructions to the evidence and the law applicable to the case in order that the court may be knowledgeably guided to a proper conclusion.

Particularly do we call his attention to Weiler v United States, supra, and the need to advise the court-martial that it must believe the testimony of a single witness, Posey, presented by the Government; that it must also thereafter find the corroborating evidence trustworthy; and that both establish the falsity of accused's statement beyond a reasonable doubt. *Id.*, at page 610.

This observation applies with peculiar emphasis to the matter of voluntariness of accused's second statement. Again, the law officer gave a broad form instruction with no mention of the possible effect of Posey's alleged threats against accused. Tailoring of the instruction to the circumstances presented by the defense would have illuminated the understanding of the court and left it to apply the law to the evidence with far better knowledge of the issues. See United States v Tanner, 14 USCMA 447, 34 CMR 227, and United States v Houston, 15 USCMA 239, 35 CMR 211. In the event of another trial, we are certain steps will be taken to prevent recurrence of these errors.

The decision of the board of review is reversed and the record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge QUINN and Judge KILDAY concur.