UNITED STATES

v.

**Lieutenant Colonel Darrell L. HOGUE, 430–74–3747FV, United States Air Force.**

**ACM 30381.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 17 April 1992.

Decided 24 March 1995.

Appellate Counsel for Appellant: Colonel Terry J. Woodhouse, Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, Captain Robert A. Parks, and Captain Richard D. Desmond.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise and Colonel Thomas E. Schlegel.

Before DIXON, YOUNG, and GAMBOA, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Senior Judge:

Court members convicted appellant of false swearing in violation of Article 134, UCMJ, 10 U.S.C. § 934 (1988), and sentenced him to confinement for 6 months and forfeiture of $2,500 pay per month for 6 months. The Judge Advocate General referred the case to this Court pursuant to Article 69(d), UCMJ, 10 U.S.C. § 869(d) (1988), and invited our attention to three

issues relating to the sufficiency of proof of falsity: (1) whether a urinalysis litigation report and testimony of an expert witness is "direct evidence" under *Manual for Courts–Martial, United States, 1984* (MCM), Part IV, ¶ 57c(2)(c); (2) whether there was sufficient corroboration to prove falsity; and (3) whether the military judge's instruction on proving the falsity of the statement was correct. We affirm appellant's conviction and sentence.

In June 1991, special agents of the Air Force Office of Special Investigations (AFO-SI) at Tinker Air Force Base interviewed a civilian employee who was suspected of distributing drugs to others on base. During the interview, the civilian employee told the agents she had heard rumors that a Lieutenant Colonel Hogue, a reserve judge advocate, had been involved with cocaine. The AFOSI agents waited until November, when appellant was performing his two weeks of active duty, to interview him. After being advised of his rights, appellant subscribed under oath a statement, to wit: "In past years I have heard rumors that I use drugs and sell drugs. I do not do either," and "I have not used narcotics." Appellant consented to providing a urine specimen and did so. A urinalysis of the specimen established the presence of benzoylecgonine, a metabolite of cocaine. Appellant was charged with using cocaine and false swearing. Apparently because of concerns about military jurisdiction over appellant at the time he used the cocaine, the convening authority withdrew the use charge before trial.

At trial, the United States presented the testimony of the AFOSI agent who swore appellant to the statement and observed him sign it, the testimony of the personnel who observed appellant provide the specimen and shipped it to the drug testing laboratory, the laboratory report of test results, and the testimony of an expert witness to explain the test results.

## II. False Swearing

"False swearing is the making under a lawful oath or equivalent of any false statement, oral or written, not believing the statement to be true." MCM, Part IV, ¶ 79c(1). The restrictions applicable to proving the falsity of a perjured statement, under Article 131, UCMJ, 10 U.S.C. § 931 (1988), contained in MCM, Part IV, ¶ 57c(2)(c), apply to false swearing. MCM, Part IV, ¶ 79c(1).

> The falsity of the allegedly perjured statement cannot be proved by circumstantial evidence alone, except with respect to matters which by their nature are not susceptible of direct proof. The falsity of the statement cannot be proved by the testimony of a single witness unless that testimony directly contradicts the statement and is corroborated by other evidence * either direct or circumstantial, tending to prove the falsity of the statement. However, documentary evidence directly disproving the truth of the statement charged to have been perjured need not be corroborated if: the document is an official record shown to have been well known to the accused at the time the oath was taken; or the documentary evidence originated from the accused—or had in any manner been recognized by the accused as containing the truth—before the allegedly perjured statement was made.

Exec.Order No. 12,473, 49 Fed.Reg. 17,152 (1984).

This rule, known as the two-witness rule, applies to perjury and false swearing, but not other offenses. It is an anomaly in our legal system and more a product of historical accident than logical evolution of the law.

At early common law, there was no requirement that any offense, including perjury, be proved by more than one witness. 7 John H. Wigmore, *Evidence* § 2032 (Chadbourn rev. 1978). Although perjury was a crime cognizable in the common law criminal courts of England, trials for this offense were conducted almost exclusively in the Court of the Star Chamber. In the Star Chamber,

---

* The *Manual for Courts–Martial, United States, 1984,* Part IV, ¶ 57c(2)(c) (1994 ed.) contains the word "guidance" rather than the word "evidence." Apparently, that is a typographical error as the Executive Order, in which the President promulgated the MCM, contains the word "evidence." Exec.Order No. 12,473, 49 Fed. Reg. 17,152 (1984).

proof of falsity required the oath of two "witnesses." When the Star Chamber was abolished in 1640, the common law courts assumed jurisdiction of most perjury cases (some cases were tried in the ecclesiastical courts). Despite its incongruity with the rest of the common law, the common law courts seem to have adopted the Star Chamber's two-witness rule for proving falsity. *Id.* § 2040.

The two-witness rule also found its way into American jurisprudence. In 1945, government prosecutors asked the Supreme Court to abandon the rule. *Weiler v. United States,* 323 U.S. 606, 608, 65 S.Ct. 548, 550, 89 L.Ed. 495 (1945). The Supreme Court noted the failure of the two-witness rule to square with our normal rules of evaluating credibility of evidence, but, in light of its long history and the failure of Congress to overturn it, refused to abandon it. "The rule may originally have stemmed from quite different reasoning, but implicit in its evolution and continued vitality has been the fear that innocent witnesses might be unduly harassed or convicted in perjury prosecutions if a less stringent rule were adopted." *Weiler,* 323 U.S. at 608, 65 S.Ct. at 550.

In 1970, Congress specifically abolished the two-witness rule for false declarations before a grand jury or court, prosecuted under 18 U.S.C. § 1623, but not for those perjury cases prosecuted under the general perjury statute, 18 U.S.C. § 1621. *See United States v. Chaplin,* 25 F.3d 1373, 1378 n. 5 (7th Cir.1994). Congress did not change Article 131, UCMJ, in a similar manner.

The two-witness "rule and its application to a false-swearing offense under Article 134 is a well-recognized exercise of power by the President in accordance with Article 36, UCMJ, 10 U.S.C. § 836." *United States v. Tunstall,* 24 M.J. 235, 236–37 (C.M.A.1987) (footnote omitted) (citing *United States v. Clayton,* 17 U.S.C.M.A. 248, 250, 38 C.M.R. 46, 48, 1967 WL 4366 (1967)). Although the President has the authority under Article 36, UCMJ, to revoke or limit this rule, he has not seen fit to do so. The vitality of the two-witness rule in the military is not in question. *United States v. Olivero,* 39 M.J. 246 (C.M.A.

1994). Therefore, we must apply it if the evidence so warrants.

## III. Direct v. Circumstantial Evidence

The Judge Advocate General asks whether the urinalysis test results report and the testimony of an expert witness explaining the report is direct or circumstantial evidence. How we characterize the evidence, as direct or circumstantial, may affect the application of the two-witness rule.

> Direct evidence is evidence which tends directly to prove or disprove a fact in issue (for example, an element of the offense charged). Circumstantial evidence is evidence which tends directly to prove not a fact in issue but some other fact or circumstance from which, either alone or together with other facts or circumstances, one may reasonably infer the existence or nonexistence of a fact in issue.

R.C.M. 918(c) Discussion. *See* Joe H. Munster and Murl A. Larkin, *Military Evidence* §§ 1.3e and f (1959). In other words, the characterization of evidence as "direct" or "circumstantial" is determined not by the nature of the evidence, but by the "inference which is sought to be drawn from the evidence to the truth of the proposition for which it is offered." McCormick, *Evidence* § 185, at 435 (Edward W. Cleary ed. 1972). For example, testimony from a witness that he saw the accused run from the scene of a murder would be direct evidence of flight, but only circumstantial evidence that the accused committed the murder. *Id.*

■ As part of its case, the prosecution was required to prove beyond a reasonable doubt appellant's statement, that he did not use drugs, was false, and he knew it was false. In other words, the prosecution had to prove appellant knowingly used cocaine, then lied about it in his sworn statement. The test results report, taken together with the testimony of an expert witness explaining the report, is direct evidence that appellant ingested an illegal drug, which was a fact in issue. It is not direct evidence that he knowingly used illegal drugs, and therefore that he knew his statement was false—it just permits the trier of fact to infer knowing use in the absence of credible evidence to the

contrary. *See United States v. Harper*, 22 M.J. 157 (C.M.A.1986).

## IV. Corroboration

The two-witness rule is basically a rule of corroboration. While the meaning of the rule may seem clear on its face, courts have been reluctant to apply the rule blindly without considering whether its application in a particular case advances the purpose of the rule. After all, the rule "is really nothing but a short-cut way of stating that in a perjury trial the evidence must consist of something more convincing than one man's word against another's." *United States v. Beach*, 296 F.2d 153, 155 (4th Cir.1961).

In *United States v. Wood*, 39 U.S. (14 Pet.) 430, 439, 10 L.Ed. 527 (1840), the Supreme Court discussed the two-witness rule and how it was to be applied. Wood had been indicted for perjury, in that he falsely swore to the value of woolen goods he imported into the United States. The government introduced into evidence the accused's invoice book and letters, between the accused and his father, which tended to show a conspiracy to defraud the United States of import duties. Wood objected to the competency of such evidence to convict him. The judges of the Circuit Court for the Southern District of New York were divided as to whether the documentary evidence was sufficient to convict. By certificate of division of opinion, they asked the Supreme Court to resolve whether, in order to convict the accused, the prosecution had to produce "at least one living witness, corroborated by another witness, or by circumstances, to contradict the oath of the defendant." *Wood*, 39 U.S. (14 Pet.) at 437, 10 L.Ed. at 531.

In the opinion of the Court, Mr. Justice Wayne explained how the two-witness rule developed over time. At first, the rule required that two witnesses swear directly adversely from defendant's oath. The rule was later extended such that "a single witness, corroborated by other witnesses, swearing to circumstances bearing directly upon the imputed corpus delicti of a defendant, was deemed sufficient." Later, "a witness who gave proof only of the contradictory oaths of the defendant on two occasions" was held to be sufficient. *Id.*, 39 U.S. (14 Pet.) at 440–41, 10 L.Ed. at 532. "We thus see that this rule in its proper application, has been expanded beyond its literal terms as cases have occurred in which proofs have been offered equivalent to the end intended to be accomplished by the rule." *Id.*, 39 U.S. (14 Pet.) at 441, 10 L.Ed. at 533. The Supreme Court held that the evidence was sufficient to meet the two-witness rule when proved "by documentary or written testimony springing" from the accused himself or official records known to the accused at the time he took the oath. *Id.*

In *Collins v. United States*, 272 F.2d 650 (2d Cir.1959), *cert. denied*, 362 U.S. 911, 80 S.Ct. 681, 4 L.Ed.2d 619 (1960), *reh. denied*, 362 U.S. 957, 80 S.Ct. 859, 4 L.Ed.2d 874 (1960), a union employee was convicted of committing perjury before a grand jury. Collins provided the grand jury with minutes of certain union meetings. He testified the minutes were typed and signed in 1953, shortly after the meetings were held, and had not been changed since. The government produced a designer of typewriter type who testified that the minutes had been prepared on an IBM typewriter, that he had designed the particular type used in the minutes, and that the type was not available on a typewriter until 1955. An agent of the Federal Bureau of Investigations testified that the minutes had been prepared on a typewriter seized from the union office, and that seized records indicated the typewriter had been purchased in 1956. The Second Circuit declined to decide whether the evidence was direct or circumstantial—"[t]he test should be rather whether the evidence is of a quality to assure that a guilty verdict is solidly founded." *Id.*, 272 F.2d at 652. In sustaining the conviction, the Court found the evidence inconsistent with Collins' innocence and more convincing than the testimony of one or two witnesses. *Id.*

In *United States v. Tunstall*, 24 M.J. 235 (C.M.A.1987), the Court of Military Appeals examined the meaning of the two-witness rule in the military. Private Tunstall was charged with falsely swearing to the following statement: "I did not steal any stereo, I did not sell a stereo to GARCIA." One

witness testified that he saw Tunstall enter a dormitory in which he did not belong and leave with a stereo unit under his arm. Garcia testified that Tunstall sold him a stereo. Investigative agents testified that they recovered a stereo from Garcia, and by stipulation, the victim of the theft testified that the stereo unit returned to him by investigative agents was the same unit missing from his cubicle.

The Court of Military Appeals affirmed Tunstall's conviction for false swearing. In doing so, however, it criticized the Court of Military Review for suggesting the two-witness rule "may be ignored or it may be loosely applied as reflected in [*Collins*]. Article 36 ... precludes the former course of action, and the limited exception provided in *Collins* for 'absolutely inconsistent' circumstantial evidence is inapplicable to the present case." *Tunstall,* 24 M.J. at 237 n. 2. Instead, the Court adopted an application of the two-witness rule that permitted sustaining a false swearing conviction when the "false oath relates to two or more facts and one witness contradicts the accused as to one fact and another witness as to another fact," because "the two witnesses corroborate each other in the fact that the accused swore falsely." *Tunstall,* 24 M.J. at 237 (quoting *Goins v. Commonwealth,* 167 Ky. 603, 181 S.W. 184, 186 (1916), *quoted in May v. United States,* 280 F.2d 555, 558–61 (6th Cir. 1960)).

■ Thus, "[t]he question, is when and how the rule is to be applied, that it may not, from a technical interpretation, or positive undeviating adherence to words, exclude all other testimony as strong and conclusive as that which the rule requires." *Wood,* 39 U.S. (14 Pet.) at 439–40, 10 L.Ed. at 532. In this case, appellant was convicted on evidence which came directly from his own body, much as *Wood* was convicted on evidence produced from his own pen. The two-witness rule "has been expanded beyond its literal terms, as cases have occurred in which proofs have been offered equivalent to the end intended to be accomplished by the rule." *Id.,* 39 U.S. (14 Pet.) at 441, 10 L.Ed. at 533. We believe it should be expanded further to include cases in which an accused has provided a urine specimen which tests positive for illegal drugs.

We hold that the results of the urinalysis, coupled with the testimony of the expert witness to explain those results, was sufficient to support a finding that appellant knowingly used cocaine, and therefore falsely swore to the contrary in his statement. The evidence is more convincing than the testimony of an eyewitness and, unlike the testimony of one witness, is not susceptible to being misused to unduly harass or convict persons who testify in court or make statements under oath.

## V. Instructions

The military judge prepared written findings instructions and provided them to counsel. He specifically asked the defense if they objected to his explanation of the elements of the offense, which included his explanation of the two-witness rule. The defense counsel stated that they had no objections. That instruction included the following language:

> In element (5), there are special rules for proving the falsity of a statement. The falsity of a statement can be proven by documentary evidence directly disproving the truth of the statement described in the specification, as long as the evidence is corroborated or supported by other evidence tending to prove the falsity of the statement. To "corroborate" means to strengthen: to make more certain; to add weight. "Corroboration" required to prove false swearing is proof of independent facts or circumstances which, considered together, tend to confirm the information contained in the document to establish the falsity of the oath. You may find the Accused guilty of false swearing only if you find that the documentary evidence and credible corroborative evidence establish the falsity of the Accused's statement beyond a reasonable doubt.

Appellant claims this instruction was error because it failed to fully explain the "limiting conditions on the use of documentary evidence."

The instruction the military judge gave was an accurate statement of the law concerning the proof of falsity through documen-

tary evidence. The so-called "limiting conditions" appellant claims the military judge failed to instruct upon were actually exceptions to the two-witness rule—situations in which no corroboration was needed. It seems disingenuous for appellant to claim the military judge committed plain error by failing to give an instruction that would have been to his detriment.

 Regardless, in light of our holding that corroboration of the urinalysis was not necessary to sustain the conviction, no instruction on the two-witness rule was necessary. We do not believe appellant was prejudiced either because an instruction was given or because the exceptions to the corroboration rule were not. "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) *quoted in United States v. Robinson,* 38 M.J. 30, 31 (C.M.A.1993). This is not a case in which appellant merely failed to object; appellant, through counsel, specifically waived any objection to this instruction. In the absence of plain error, appellant's failure to object to findings instructions at trial waives the objection. R.C.M. 920(f). Giving the instruction was not plain error.

## VI. Conclusion

The findings and sentence are correct in law and fact, and we find no errors prejudicial to appellant's substantial rights. Accordingly, the findings and sentence are

AFFIRMED.

Chief Judge DIXON and Judge GAMBOA concur.