UNITED STATES

v.

**Airman First Class Nicholas J. MALLETT, United States Air Force.**

**ACM 35505.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 30 Dec. 2002.

Decided 8 Aug. 2005.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Major Terry L. McElyea, and Major L. Martin Powell.

Appellate Counsel for the United States: Colonel LeEllen Coacher, Lieutenant Colonel Robert V. Combs, and Major Kevin P. Stiens.

Before STONE, GENT, and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

GENT, Judge:

A general court-martial composed of officer members convicted the appellant, pursuant to his pleas, of using cocaine on divers occasions in violation of Article 112(a), UCMJ, 10 U.S.C. § 912(a). The court members sentenced him to a bad-conduct discharge, confinement for 12 months, and reduction to the grade of E-1. The convening authority reduced the confinement to 8 months, but otherwise approved the remaining sentence.

The appellant assigns two errors for our consideration: (1) Whether the trial counsel committed plain error by injecting unlawful command influence into the proceedings during his sentencing argument; and (2) Whether the sentence is inappropriately severe in light of the offenses and in comparison to the sentence of the appellant's co-actor. Because we hold for the appellant on the first issue, we do not reach the remaining assignment of error.

### Background

At trial, the appellant admitted to using cocaine twice. He told the military judge that his cocaine use occurred in the course of a single night at the off-base apartment of a fellow airman, who provided him the drug. This other airman was also convicted of divers use of cocaine at a court-martial that preceded the appellant's. The co-actor was sentenced to confinement for 4 months, restriction to base for 2 months, hard labor without confinement for 2 months, forfeiture of $500.00 pay per month for 6 months, and reduction to the grade of E-1.

The appellant asserts that the trial counsel's sentencing argument injected unlawful command influence into the proceedings because he made reference to commanders. In a portion of his argument, the trial counsel said:

I was trying to think about how could I articulate the need for deterrence and the value of deterrence. How could I paint a picture of this that's not just abstract legal talk? I think back to commander's calls that I've been at where the commander would warn us to stay away, and in as bold terms as they could, not to use drugs. Bad things can happen to you in your career if you do.

You've been at those commander's calls. And you know that you never hear more than that. Why is that? Because the commander doesn't necessarily have the authority to decide to impose a bad conduct discharge, or to impose a period of confinement for 18 months. Why not? Because the commander can prefer charges and then it comes to a court, it comes to a group just like this. It's out of the commander's hands in a lot of ways.

But when you think about what if a commander could do that, what if a commander did stand up at commander's call and was able to make a promise, "If you use cocaine in my unit, this will happen to you." Make that a policy letter or something. What if the commander had the authority to do that in a unit full of airmen identical to this accused right here? What would he or she say to get their attention? Would he say, "Don't use cocaine or you'll get 40 days restriction to base, dang it?" I don't think he would. Why? Because that's not very scary, is it?

Would she say, "Don't use cocaine or you'll get 30 days extra duties?" No, she wouldn't say that. That is not scary. That doesn't get people's attention. What would a commander say to get his unit's attention and say, "I mean business about drugs," if he had the authority to be the judge and jury in a case where you are, in essence, the jury deciding this?

I submit that a sentence that would get people's attention, that would make airmen stand up and listen, and would possibly have the effect of keeping us from having so many of these cases involving airmen who have gone down this road of using cocaine and other illegal drugs is 18 months [of] confinement and a bad conduct discharge. That gets your attention. And if that doesn't get your attention, then nothing's going to get your attention.

The appellant contends that this case is similar to *United States v. Sparrow*, 33 M.J. 139, 140 (C.M.A.1991), where trial counsel expressly named the convening authority during his sentencing argument. In *Sparrow*, trial counsel argued, "General Graves has selected you. He said, 'Be here. Do it. You have good judgment. I trust you. I know you'll do the right thing.'" *Id.* at 140. Our superior court found these comments constituted error because they were "susceptible of [a] sinister interpretation," that is, a reminder to the members to impose the sentence advocated by the trial counsel. *Id.* at 141.

The government, on the other hand, asserts that the trial counsel's comments were proper and, in any event, should be reviewed using a plain error standard.

The *Sparrow* court held the error was not "plain" because the "defense counsel, who was in the best position to assess the magnitude of the effect of trial counsel's remarks on the members, did not feel compelled to object[.]" *Id.* Also, the military judge did not find it necessary to intervene. *Id.* The *Sparrow* court further concluded the error was not plain because the members adjudged a sentence far less than that recommended by the trial counsel. *Id.* But, because of its "special interest" in cases involving "the possibility of illegal command influence," the court declined to apply the waiver provision of Rule for Courts–Martial (R.C.M.) 1001(g) concerning argument of counsel. Instead, it applied a "stricter scrutiny" standard and held that it was "'convinced beyond a reasonable doubt' that the accused 'received a fair and impartial court-martial and that the outcome of the trial was not unlawfully influenced.'" *Id.* (citing *United States v. Levite*, 25 M.J. 334, 341 (C.M.A.1987) (Cox, J., concurring)).

*Analysis*

Article 37(a), UCMJ, 10 U.S.C. § 837(a), prohibits a convening authority, commanding officer, or other military member from using unauthorized means to influence a court-martial. Article 37(a), UCMJ, states:

No authority convening a general, special, or summary court-martial, nor any other commanding officer, may censure, reprimand, or admonish the court or any member, military judge, or counsel thereof, with respect to the findings or sentence adjudged by the court, or with respect to any other exercises of its or his functions in the conduct of the proceedings. No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts. The foregoing provisions of the subsection shall not apply with respect to (1) general instructional or informational courses in military justice if such courses are designed solely for the purpose of instructing members of a command in the substantive and procedural aspects of courts-martial, or (2) to statements and instructions given in open court by the military judge, president of a special court-martial, or counsel.

During argument on sentencing, the trial counsel may offer his or her own personal views concerning an appropriate sentence, but R.C.M. 1001(g) expressly prohibits trial counsel from making reference to a convening authority or command policy:

*Argument.* . . . Trial counsel may not in argument purport to speak for the convening authority or any higher authority, or refer to the views of such authorities or any policy directive relevant to punishment or to any punishment or quantum of punishment greater than that court-martial may adjudge. Trial counsel may, however, recommend a specific lawful sentence and may also refer to generally accepted sentencing philosophies, including rehabilitation of the accused, general deterrence, specific deterrence of misconduct by the accused, and social retribution. Failure to object to improper argument before the military judge begins to instruct the members on sentencing shall constitute waiver of the objection.

Our superior court equates unlawful command influence to prosecutorial misconduct. *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A.1986). It has held that "in cases

where unlawful command influence has been exercised, no reviewing court may properly affirm [the] findings and sentence unless it is persuaded beyond a reasonable doubt that the findings and sentence have not been affected by the command influence." *Id.* at 394. Our superior court also applies this standard when actions of those bearing "some mantle of command authority," other than a convening authority or commander, improperly influence a court-martial. *United States v. Stombaugh,* 40 M.J. 208, 211 (C.M.A.1994) (detailing "many instances of unlawful command influence," including a staff judge advocate briefing to court members before trial). As we noted above, our superior court applied this standard in *Sparrow,* where the trial counsel made an explicit reference to the convening authority in his argument before court members.

■ When the issue of unlawful influence is raised on appeal, an appellant must:

(1) show facts which, if true, constitute unlawful command influence; (2) show that the proceedings were unfair; and (3) show that unlawful command influence was the cause of the unfairness.

*United States v. Biagase,* 50 M.J. 143, 150 (C.A.A.F.1999) (citing *Stombaugh,* 40 M.J. at 213). *See also United States v. Dugan,* 58 M.J. 253, 258 (C.A.A.F.2003); *Levite,* 25 M.J. at 341.

When we consider whether a trial counsel's comments were improper, we examine them "in light of [their] context within the entire court-martial." *United States v. Carter,* 61 M.J. 30, 33 (C.A.A.F.2005). *See also United States v. Baer,* 53 M.J. 235, 238 (C.A.A.F. 2000). "The focus of our inquiry should not be on words in isolation, but on the argument as 'viewed in context.'" *Id.* (citing *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

### Discussion

■ Turning to the present case, we note at the outset there is no evidence indicating a convening authority or commander encouraged the trial counsel's remarks. Nonetheless, trial counsel implied that unnamed commanders favored the sentence he proposed when he asked the court members, "What

would a commander say to get his unit's attention and say, 'I mean business about drugs,' if he had the authority to be the judge and jury in a case where you are, in essence, the jury deciding this." We find this comment improper under R.C.M. 1001(g). Moreover, the trial counsel cloaked himself with the "mantle of command authority," thereby creating the appearance of unlawful command influence. *See Stombaugh,* 40 M.J. at 211; *United States v. Allen,* 31 M.J. 572, 590–91 (N.M.C.M.R.1990).

In addition, the trial counsel asserted that if unnamed commanders could establish a policy on punishment, these policies would not include restriction to base or additional duties because these penalties are not "very scary" punishments. These comments were improper because they suggested that the court members should not impose hard labor without confinement, as recommended by the trial defense counsel, because their own commanders (or fellow commanders) would not find it sufficient to deter others. We find that these comments were improper because, in effect, they brought the views of outside commanders into the courtroom.

Thus, we conclude that trial counsel's argument contained obvious errors. Article 37(a), UCMJ, R.C.M. 1001(g), and *United States v. Grady,* 15 M.J. 275 (C.M.A.1983). *See also United States v. Davis,* 24 C.M.R. 235, 237, 1957 WL 4750 (C.M.A.1957) (it is the fact of the reference to the command policy that is condemned, not the source of the reference).

■ We next consider the prejudicial impact of this argument within the context of the entire trial. We are convinced that the appellant has demonstrated that the proceedings were unfair and that the improper argument was the cause of the unfairness. *Biagase,* 50 M.J. at 151. *See also Levite,* 25 M.J. at 341. The trial counsel's errors were not just a brief slip of the tongue. He used the word "commander" 11 times throughout his argument. Nor were these errors rendered harmless by an immediate curative instruction from the military judge. Although the military judge later included a caution in her standard instructions that arguments of counsel represent solely their opinions, it was

given too late to erase the impression left by the trial counsel's comments. Finally, considering the entire record before us, "we are not convinced that the sentence indicates a degree of leniency demonstrating complete disregard of the influence" of the argument. *Stombaugh*, 40 M.J. at 214; *United States v. Wright*, 37 C.M.R. 374, 377, 1967 WL 4266 (C.M.A.1967). Consequently, we hold that the trial counsel's argument was plain error.

## Conclusion

The findings are affirmed. The sentence is set aside. A rehearing on sentence may be ordered.

SMITH, Judge (dissenting):

I share the majority's instinctive concern with the challenged portion of the trial counsel's sentencing argument. However, because I believe the majority goes too far in concluding the argument amounted to unlawful command influence, I respectfully dissent.

The legislative history of Article 37, UCMJ, reflects the effort to address direct unlawful command influence over the military justice process.[1] That was a logical focus, given Congress' concern with the "commander-dominated"[2] military justice system operating under the Articles of War.

As military jurisprudence has developed, our superior court has recognized that unlawful influence can occur by commanders and other participants in the process—those with "some mantle of command authority" in the alleged unlawful activity. The actors have been convening authorities, commanders, and staff judge advocates. When the officiality of command has been established, we have applied a very stringent standard and burden on the Government. *Stombaugh*, 40 M.J. at 211. The majority cites *Stombaugh* in concluding that the trial counsel's comments in the appellant's case "bore a 'mantle of authority,'" but to do so stretches *Stombaugh* beyond its intended meaning. *Stombaugh* involved an allegation of direct unlawful influence: witness tampering. The seven representative cases cited in *Stombaugh* as having "some mantle of command authority" all involved direct, out-of-court conduct by either a convening authority, a commander other than a convening authority, or a staff judge advocate. The majority concedes there is no evidence that a convening authority or other commander encouraged the trial counsel in the appellant's case to argue as he did.

I read Article 37(a), UCMJ, *Stombaugh*, and other seminal unlawful command influence cases[3] to reach and condemn direct improper involvement in the military justice system, in essence "actual" unlawful command influence.[4] Since I find no evidence to support a conclusion of direct improper involvement by a convening authority, commander, or other participant in this case, in the *Stombaugh* context, I cannot agree with the majority's conclusion that the trial counsel's comments "bore a 'mantle of authority'" and constituted unlawful command influence on that basis.

Improper argument cases are tough to categorize because they are less "actual." Typically, there is no involvement by a convening authority or commander in the arguments

1. See, for example, the prepared statement of Professor Edmund M. Morgan Jr., Chairman of the Department of Defense Committee appointed by Secretary of Defense James Forrestal to draft the Uniform Code of Military Justice, in which Professor Morgan explained the committee's overall effort to strike the balance between providing functions for command and the administration of justice: "[W]e examined ways and means of restricting the commander to his legitimate functions. We have tried to prevent courts martial from being an instrumentality and agency to express the will of the commander." *Uniform Code of Military Justice: Hearings on S. 857 and H.R. 4080 Before the Comm. Of Armed Services*, 81st Cong., 1st Sess., 38 (1949) (testimony of Professor Edmund M. Morgan Jr., Chairman of the Department of Defense Committee).

2. Brigadier General (Retired) John S. Cooke, *Introduction: Fiftieth Anniversary of the Uniform Code of Military Justice Symposium Edition*, 165 Mil. L.Rev. 1, 3 (2000).

3. *See e.g. Thomas*, 22 M.J. at 388; *Levite*, 25 M.J. at 334.

4. I use "actual" to mean direct involvement (including attempts) by command authorities, recognizing that others may categorize "actual" unlawful command influence differently. *Allen*, 31 M.J. at 590.

made at trial, and, very frequently, even the supervisory staff judge advocate does not ask the trial counsel to preview his or her argument prior to trial. Given that reality and the conduct Article 37, UCMJ, was designed to proscribe, it is understandable that our superior court has been reluctant to explicitly conclude that a prosecutor's argument, even if improper, amounts to unlawful command influence. *See e.g. United States v. Barraza-martinez*, 58 M.J. 173 (C.A.A.F.2003) (reference to the President's "war on drugs" framed as issue of improper argument under R.C.M. 1001(g)); *United States v. Kropf*, 39 M.J. 107 (C.M.A.1994) (not plain error for trial counsel to refer to Navy's "zero tolerance" drug policy); *Sparrow*, 33 M.J. at 139 (error for trial counsel to refer to the convening authority by name in sentencing argument, citing R.C.M. 1001(g), but no prejudice to the substantial rights of the accused); *Grady*, 15 M.J. at 275. Of these cases, only *Grady* involved comments sufficiently egregious to warrant reversal: the assistant trial counsel pointedly referred to Strategic Air Command's drug policy and argued, in part, "I think you are somewhat bound to adhere to those policies in deciding on a sentence." *Grady*, 15 M.J. at 276. But even in *Grady*, our superior court did not conclude that the improper argument amounted to unlawful command influence.

While these cases generally are cast in improper argument terms, a heightened improper argument standard is applied when unlawful command influence is raised. Instead of assessing for plain error,[5] alleged unlawful command influence receives stricter scrutiny,[6] presumably through application of the burden assigned to the government for assessing any unlawful command influence raised on appeal—but in the context of what constitutes improper argument under R.C.M. 1001(g). The government may carry its burden: (1) by disproving the predicate facts on which the allegation of unlawful command of influence is based; (2) by persuading the appellate court that the facts do not constitute unlawful command influence; or (3) by persuading the appellate court that the un-

lawful command influence had no prejudicial impact on the court-martial. *Biagase*, 50 M.J. at 151.

Using the *Biagase* framework, the predicate facts exist, in the sense that there is no dispute the trial counsel referred to a commander's call in his sentencing argument. The mere mention of a commander's call in a government argument probably has become a red flag sufficient to raise the specter of command influence (*Id.*), the presence of an "appearance of evil" (*Thomas*, 22 M.J. at 397), or the possibility the comments would be considered "susceptible of [a] sinister interpretation" (*Sparrow*, 33 M.J. at 141).

However, I part company with the majority on whether the predicate facts (the argument by trial counsel) constitute unlawful command influence, or whether the comments are improper at all under R.C.M. 1001(g). The appearance of command influence found by the majority at most shifts the burden to the government; it does not amount to unlawful command influence condemned by Article 37, UCMJ. To be clear, I think the trial counsel's commanders call comments were poorly conceived and obviously not influenced by common sense or critical thought. But a bad argument is not necessarily an improper one.

When assessing an allegation that comments by a trial counsel amounted to unlawful command influence or were otherwise improper, the comments must be considered in the context of the entire court-martial. *Carter*, 61 M.J. at 33. The following facts are important: the trial counsel's commander's call analogy was hypothetical (about an unnamed commander at an unidentified command level)—unlike the body of case law addressing either conduct surrounding an actual command briefing or a trial counsel's reference to an actual convening authority, commander, or command policy; two of the members had command experience, including the panel president (a colonel), and were not likely to be improperly swayed by the trial counsel's stilted hypothetical; the trial counsel explained the hypothetical as his way of "trying to think about how could I articulate

---

5. *Carter*, 61 M.J. at 30; *Baer*, 53 M.J. at 235.

6. *Sparrow*, 33 M.J. at 141.

the need for deterrence"; he had offered his specific sentence recommendation long before the questionable portion of his argument was made; there was no objection by the trial defense counsel or contemporaneous instruction by the military judge; the military judge gave the standard instructions to the members that it was their responsibility to determine sentence, and that arguments of counsel "are only their individual suggestions and may not be considered as the recommendation or opinion of anyone other than that counsel"; and, the members did not impose the term of confinement the trial counsel recommended (18 months).

Based on that trial context, I cannot conclude the trial counsel's comments constituted unlawful command influence or were tantamount to it. And, I cannot conclude the comments were improper under a plain reading of R.C.M. 1001(g): the trial counsel did not "purport to speak for the convening authority or any higher authority, or refer to the views of such authorities or any policy directive relative to punishment or to any punishment or quantum of punishment greater than that court-martial may adjudge." For these reasons, I must respectfully dissent.